OPINION
{¶ 1} Defendant-appellant, Joseph Lee Young, appeals the denial of his motion to suppress by the Clermont County Court of Common Pleas.
 {¶ 2} On December 19, 2002, appellant was living at 22 Holly Lane, Fay Gardens Mobile Home Park, in Loveland, Ohio. That day, Officer Ron Robinson of the Goshen Township Police Department picked up appellant's trash and took it to the police department. An inspection of the trash by Officer Robinson and Agent Marc Sobello of the Clermont County Narcotics Task Force yielded marijuana seeds, burnt tin foil and a glass smoking device, indicative of methamphetamine use, and burnt pseudoephedrine blister packs and a grocery store receipt for the purchase of lithium batteries, indicative of methamphetamine manufacture. There was also a brown powder residue which tested positive for methamphetamine.
 {¶ 3} On December 22, based on historical information and the evidence found in the trash, Sobello prepared an affidavit for a warrant to search 22 Holly Lane, Fay Gardens Mobile Home Park. The historical information consisted largely of information received from several anonymous sources, without any information provided as to the reliability of those sources, and explained appellant's known association with two individuals who were members of the Iron Horsemen Motorcycle Club and who were involved in manufacturing methamphetamine. The affidavit also listed the type of items commonly used to manufacture methamphetamine and related Sobello's training and experience regarding drug violators and suspected clandestine drug laboratories.
 {¶ 4} Sobello presented the affidavit to Judge James Shriver of the Clermont County Municipal Court. Based on the affidavit, Judge Shriver issued a warrant to search appellant's residence. The search warrant was executed on December 23.
 {¶ 5} As a result of the search, appellant was indicted on one count of aggravated possession of methamphetamine, a third-degree felony in violation of R.C. 2925.11(A), and one count of illegal manufacture of methamphetamine, a second-degree felony in violation of R.C. 2925.04(A). Appellant moved to suppress the evidence seized at his residence on the ground that the search warrant was invalid. Specifically, appellant claimed that the search warrant was overbroad; the affidavit was insufficient to establish probable cause for the search warrant; and the police did not act in good faith when executing the search warrant. Following a suppression hearing, the trial court denied appellant's motion to suppress. Appellant entered a no contest plea, was found guilty as charged, and was sentenced accordingly. This appeal follows in which he raises three assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "NO PROBABLE CAUSE EXISTED FOR THE ISSUANCE OF A WARRANT FOR THE SEARCH OF 22 HOLLY LANE, FAY GARDENS MOBILE HOME PARK."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE WARRANT FOR THE SEARCH OF 22 HOLLY LANE, FAY GARDENS MOBILE HOME PARK, WAS OVERBROAD."
 {¶ 10} Assignment of Error No. 3:
 {¶ 11} "DET. SOBELLO DID NOT ACT IN GOOD FAITH IN EXECUTING A SEARCH WARRANT FOR 22 HOLLY LANE, FAY GARDENS MOBILE HOME PARK, WHICH HE KNEW TO BE UNCONSTITUTIONAL."
 {¶ 12} When considering a motion to suppress, the trial court assumes the role of trier of fact as it is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, a reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court erred in applying the substantive law to the facts of the case. State v. Vance (1994), 98 Ohio App.3d 56, 58.
 {¶ 13} In his first assignment of error, appellant argues that the affidavit was insufficient to establish probable cause to issue the search warrant because (1) it was for the most part based on hearsay statements from anonymous sources and from law enforcement offices, (2) the information in the affidavit was stale, (3) there was no indication as to the reliability of the anonymous sources who provided most of the historical information, and (4) "the rifling of [appellant's] garbage might itself be an unlawful search."
 {¶ 14} We address the issue of the trash search first. The affidavit stated that on December 19, 2002, "a trash inspection was conducted at 22 Holly Lane, Fay Gardens Mobile Home Park. The trash was located at the roadside where refuse is placed for pick up." At the suppression hearing, Sobello testified that the trash was picked up by Officer Robinson and taken to the police department where it was inspected by himself and Officer Robinson. On cross-examination, Sobello testified that he was not present when the trash was picked up, and that as a result, "other than what the officer told [him]," he did not know whether the trash was within the curtilage of appellant's residence. Sobello testified that the description in the affidavit of the trash location was based upon what Officer Robinson told him. Sobello admitted that the affidavit did not indicate he was not present and that he did not inform Judge Shriver that this was hearsay information. Sobello could not recall whether Judge Shriver had any questions after reading the affidavit.
 {¶ 15} During the rebuttal portion of his closing argument, appellant very briefly argued that there was no evidence "in the affidavit as to the basis for any assertion that the search of the trash was constitutional. * * * it says that it's set up by the road, but it doesn't indicate exactly where it is." While the trial court refers to the trash search in its decision denying appellant's motion to suppress, it did not address the constitutionality of that search. As a result, we must presume the trial court rejected that argument. See State v. Frost
(1984), 14 Ohio App.3d 320 (when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion).
 {¶ 16} It is well-established that there is no reasonable expectation of privacy in garbage voluntarily left for trash collection in an area which is susceptible to open inspections and "[a]ccessible to animals, children, scavengers, snoops, and to other members of the public." California v. Greenwood
(1988), 486 U.S. 35, 40, 108 S.Ct. 1625. Because the garbage is accessible to the public, anyone is free to examine it. Therefore, the police are likewise free to search it for evidence of criminal activity. See State v. Sautter (Aug. 11, 1989), Lucas App. No. L-88-324 (finding that regardless of where the trash was located, once the trash was available for pickup by the collection service, the police could pick it up and the evidence seized from the trash could be used to obtain a warrant to search defendant's home).
 {¶ 17} We are not convinced that appellant's brief argument regarding the trash search during the rebuttal portion of his closing argument qualified as an argument that the trash search was unconstitutional because of where the trash pull might have occurred. In addition, while appellant argues on appeal that the trash search might be unconstitutional in part because "the affidavit does not indicate that [Sobello] was not present and that he did not inform Judge Shriver of that omission," appellant never argued below that the search warrant for appellant's residence was invalid because the affidavit contained a false statement that was made knowingly and intentionally. There is no evidence that Sobello intentionally misled Judge Shriver. As noted earlier, the trial court, who was in the best position to evaluate Sobello's credibility, rejected appellant's argument about the trash search. We cannot second-guess a trial court's decision to believe the testimony in the record. See State v.Meyers, Warren App. No. CA2003-03-037, 2004-Ohio-1717. In light of all of the foregoing, we reject appellant's argument that there was no probable cause to issue the search warrant for appellant's residence because the trash search might be unconstitutional.
 {¶ 18} We now turn to appellant's argument that the affidavit was insufficient to establish probable cause to issue the search warrant because (1) it was essentially based on hearsay statements from anonymous sources and law enforcement officers, (2) the information in the affidavit was stale, and (3) there was no indication as to the reliability of the anonymous sources.
 {¶ 19} In determining whether probable cause exists to justify a search warrant, "[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. George
(1989), 45 Ohio St.3d 325, paragraph one of the syllabus, citingIllinois v. Gates (1978), 462 U.S. 213, 103 S.Ct. 2317. Thus, the standard for probable cause does not require a prima facie showing of criminal activity; rather, it only requires a showing that a probability of criminal activity exists. State v. Young,146 Ohio App.3d 245, 254, 2001-Ohio-4284.
 {¶ 20} In reviewing the sufficiency of probable cause in a search warrant's affidavit, neither a trial court nor an appellate court should substitute its judgment for that of the issuing judge by conducting a de novo determination as to whether the affidavit contains sufficient probable cause to issue the search warrant. George at paragraph two of the syllabus. Rather, the duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. Id.
 {¶ 21} With regard to hearsay information, we note that while it is desirable to have the affiant provide as much information as possible from his own knowledge, practical considerations often require the affiant to rely on hearsay information and/or information provided by other sources. State v. Taylor (1992),82 Ohio App.3d 434, 442. The basis of knowledge and the veracity of the person supplying the hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. State v. Prater,
Warren App. No. CA2001-12-114, 2002-Ohio-4487, ¶ 7. The fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, per se, invalidate a judge's determination of probable cause and the resulting search warrant. Id. Observations of fellow law enforcement officers "are plainly a reliable basis for a warrant applied for by one of their number." Taylor at 442.
 {¶ 22} With regard to informants' reliability and the basis of their knowledge, we note that under the current test ofIllinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, the correct inquiry for the issuing judge is not whether the affidavit includes reference to the informant's basis of knowledge, veracity, or reliability. See State v. Litteral (Jan. 4, 1999), Fayette App. No. CA98-02-002. Rather, the issuing judge must determine whether there exists a fair probability that evidence of a crime or contraband will be found in a particular place. Id. As noted earlier, this determination is to be based upon a practical, common-sense evaluation of all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying information. Id.
 {¶ 23} With regard to staleness, it is well-established that an affidavit for a search warrant must present timely information. Prater, 2002-Ohio-4487, at ¶ 11. However, no arbitrary time limit dictates when information becomes stale. Id. at ¶ 12. The test is whether the alleged facts establish probable cause that the evidence sought will be found on the premises to be searched. Id. "The likelihood that the evidence sought is still in place is a function not simply of `watch and calendar but of variables that do not punch a clock,' including the character of the crime, the criminal, the thing to be seized, as in whether perishable and easily transferable or of enduring utility to its holder, or of the place to be searched." Id. at ¶ 13. "The hare and the tortoise do not disappear at the same rate of speed." State v. Ridgeway, Washington App. No. 00CA19, 2001-Ohio-2655. Variables to consider also include whether the information in the affidavit relates to a protracted ongoing criminal activity. Prater at ¶ 13.
 {¶ 24} In the case at bar, the affidavit stated that appellant was associated with individuals who were members of the Iron Horsemen Motorcycle Club and who were involved in manufacturing methamphetamine, and that appellant himself was involved in manufacturing methamphetamine. This information was based on anonymous information received by the Clermont County Narcotics Unit and/or provided to Sobello by anonymous sources. The oldest information that appellant was involved in manufacturing methamphetamine dates from May 2001. The affidavit also stated that appellant was arrested in November 2001 for possession of methamphetamine; that at the time, he was on parole for preparation of drugs for sale and weapons violations; that in September 2002, a man died following a drug overdose at appellant's residence; that in October 2002, the Clermont County Narcotics Unit advised that appellant, now residing at 22 Holly Lane, was involved in manufacturing methamphetamine; and that in November 2002, Sobello received information from other law enforcement offices that a man present at appellant's residence at the time of the drug overdose wanted to call 9-1-1 but was forbidden by the owner of the residence to make the call because there was a methamphetamine lab at the scene. Finally, the affidavit related what was found in appellant's trash after the trash pull on December 19, 2002. The search warrant was signed on December 22 and executed the next day.
 {¶ 25} Applying the standards of review and legal principles articulated above, which includes giving great deference to the judge issuing the warrant, and viewing the totality of the circumstances, we find that the affidavit contained sufficient facts from which a neutral and detached judge could conclude that probable cause existed. The facts in the affidavit included information provided by law enforcement officers and anonymous sources that appellant was engaged in the manufacture of methamphetamine, that he was involved with individuals who were themselves involved in the manufacture of methamphetamine, and that someone was prevented from calling 9-1-1 from appellant's residence after the drug overdose because there was a methamphetamine lab at the residence.
 {¶ 26} We are mindful that when taken separately, the facts provided in the affidavit do not provide probable cause. However, the inspection of appellant's trash yielded items indicative of methamphetamine manufacturing. "Probable cause is the sum total of layers of information * * *. We weigh not individual layers but the `laminated' total." See United States v. Nigro (C.A.6, 1984), 727 F.2d 100, 104. We therefore find that the affidavit sufficiently supported the determination that there was a fair probability that evidence of criminal activity, to wit the manufacture of methamphetamine, would be found at appellant's residence. See Ridgeway, 2001-Ohio-2655, citing State v. Gale
(1991), 105 Ore.App. 489, 805 P.2d 158 (affidavit based on four-year-old information, when viewed as a whole, demonstrates probability of ongoing criminal activity, repeated at the same location and using equipment of durable nature, that evidence of methamphetamine production would be found on the defendant's property); but, see, State v. Dalpiaz, 151 Ohio App.3d 257,2002-Ohio-7346. Appellant's first assignment of error is overruled.
 {¶ 27} In his second assignment of error, appellant argues that the trial court erred by denying his motion to suppress because the search warrant was overbroad. Appellant claims that the warrant was nothing more than a "laundry list" which allowed officers "to search for any chemical or item that could [be] conceivably used in the manufacture of methamphetamine — much of which are everyday items used for non-illegal purposes."
 {¶ 28} "In search and seizure cases where a warrant is involved, the requisite specificity necessary therein usually varies with the nature of the items to be seized. Where, as here, the items are evidence or instrumentalities of a crime, it appears that the key inquiry is whether the warrants could reasonably have described the items more precisely that they did." State v. Benner (1988), 40 Ohio St.3d 301, 307. The proscription against general warrants does not prevent the issuance of a broad and generic listing of the items to be seized if the circumstances do not allow for greater specificity.Dalpiaz at ¶ 27.
 {¶ 29} In support of his argument, appellant cites Dalpiaz
and State v. Casey, Mahoning App. No. 03-MA-159,2004-Ohio-5789. In Dalpiaz, although the police only had evidence that the defendant was growing marijuana, the warrant authorized officers to seize "[a]ny drug processing, making, manufacturing, producing, transporting, delivering, processing, storing, distributing, selling, using, or otherwise dealing with a controlled substance, and all other fruits and instrumentalities of the crime at the present time unknown[,]" and "any and all evidence pertaining to violations of the drug laws of the State of Ohio[.]" The Eleventh Appellate District held that the warrant was so broad it encompassed any evidence relating to a violation of the drug laws of Ohio, and as a result, was an unacceptable impingement on Fourth Amendment rights. Dalpiaz at ¶ 30.
 {¶ 30} In Casey, although the police only had evidence of trafficking in crack cocaine, the warrant authorized officers to seize crack cocaine and "other drugs of abuse as defined by [R.C.] 3719.011(A)." The Seventh Appellate District observed that while this broad term included drugs such as cocaine, it also included intoxicants such as plastic cement, gasoline, anesthetic gas, and prescription medications. Id. at ¶ 15. Noting that search warrants should not be so general as to send police officers on fishing expeditions for contraband, the appellate court held that the warrant was overbroad. Id.
 {¶ 31} In the case at bar, the trial court found that unlike the warrants in Dalpiaz and Casey, the warrant at issue, while listing a large number of items and categories of evidence, was "limited to items which are commonly found at locations where methamphetamine is being manufactured. * * * [T]he discretion of the officers executing this search warrant was reasonably guided and limited, and the search warrant provided sufficient specificity regarding the items sought." We agree.
 {¶ 32} The warrant at issue set forth a lengthy and detailed list of the contraband items to be seized. It listed, inter alia, methamphetamine, packaging materials used to distribute methamphetamine, and categories of chemicals and paraphernalia commonly used in the production of methamphetamine (e.g., products containing pseudoephedrine, products containing alcohol or methanol, products containing sulphuric acid, starting fluid, solvents, iodine products, and cooking wear and utensils). In turn, most categories included a nonexhaustive list of specific items. Sobello explained that the warrant could not list every chemical or item that could be used to manufacture methamphetamine because there were different methods of manufacturing methamphetamine and each methamphetamine lab has its preferred list of items and chemicals. While standing alone the listed items are everyday items with no criminal or contraband implications (with the exception of methamphetamine), those items are also specific items commonly used or involved in the manufacture of methamphetamine.
 {¶ 33} We find that the warrant properly authorized police officers to search for and seize specific methamphetamine-manufacturing-related materials. An officer armed with the instant warrant could ascertain where and for which items he or she was authorized to search. We agree with the trial court that the warrant could not reasonably have described the items more precisely than it did. We therefore find that the warrant was not overbroad. Appellant's second assignment of error is overruled.
 {¶ 34} In his third assignment of error, appellant essentially argues that the trial court erred by applying the good faith exception to the exclusionary rule in overruling appellant's motion to suppress. See United States v. Leon
(1984), 468 U.S. 897, 104 S.Ct. 3405; George,45 Ohio St.3d 325. Based upon our resolution of appellant's first and second assignments of error, appellant's third assignment of error is moot. See App.R. 12(A)(1)(c).
 {¶ 35} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.