OPINION
{¶ 1} Defendant-appellant, William J. Moore, appeals from two judgment entries of the Butler County Court of Common Pleas convicting appellant of three counts of possession of cocaine and one count of aggravated possession of the drug Oxycodone and sentencing him to an aggregate term of 15 years in prison. We reverse the judgment of the trial court as to sentencing only and remand the case for resentencing.
 {¶ 2} On or about December 30, 2003, Agent J. Owens and officers of the Butler County Sheriff's Office, in collaboration with a confidential informant ("C.I.") and an unnamed third party, observed the third party make a "controlled buy" of illegal drugs from an apartment in Hamilton, Ohio. The apartment was later identified to be appellant's residence. On January 2, 2004, officers obtained a search warrant for appellant's apartment. That same day, Agent Dusty Blackmon, Agent Mike Hackney, and officers from the sheriff's strategic weapons and tactics ("SWAT") team executed the warrant. Upon their entry into the apartment, officers located appellant and a man later identified as Anthony Palmieri seated at a coffee table in the living room. On the coffee table, agents found crack cocaine and other drug-related items.
 {¶ 3} Agent Hackney advised appellant that the officers had a warrant to search for drugs and that it was in appellant's best interest to tell them where the drugs were located. Appellant then told officers that there were drugs in his bedroom, in a jacket. Agents went to the bedroom where they located two bags of powder cocaine in a brown jacket in the closet. Officers discovered various other items related to the processing and sale of illegal drugs, as well as $971 in U.S. currency. Included in the $971 were two $20 bills, identified by their serial numbers to be the same currency used by the unnamed third party to purchase drugs a few days earlier. As a result of the search, appellant was indicted in March 2004 in Case No. CR04-01-0047 for one count of possession of cocaine (30.28 grams crack cocaine) in violation of R.C. 2925.11(A), a felony of the first degree, and one count of possession of cocaine (48.25 grams powder cocaine) in violation of R.C. 2925.11(A), a felony of the third degree.
 {¶ 4} Further investigation occurred while appellant was awaiting trial of his two charges under Case No. CR04-01-0047. On July 1, 2004, a confidential informant ("C.I."), under the surveillance of Agents Hackney and Blackmon, made a "controlled buy" of crack cocaine from appellant's same apartment in Hamilton, Ohio. A second search warrant was obtained and executed that same day. As SWAT team officers announced their entry at the front door of the apartment, Agents Hackney and Blackmon, positioned outside the rear door of the apartment, observed a baggie of crack cocaine, thrown out the rear door of the apartment, land in the grass at the agents' feet. When agents entered the rear door of the apartment, they observed appellant immediately inside the door, being handcuffed by a SWAT team officer. Another man, later identified as William Jones, was located in the living room area of the apartment.
 {¶ 5} In executing the search warrant, officers found a total of $1,012 in U.S. currency in appellant's pocket. $150 of that money was identified by the serial numbers to be the same currency used by the C.I. to buy crack cocaine just a few hours earlier. Among other items related to the processing and sale of illegal drugs, officers also located a 40-mg Oxycodone tablet, found in the front pocket of a shirt in appellant's bedroom closet. Subsequently, on July 21, 2004, appellant was indicted in Case No. CR04-07-1180 for trafficking in cocaine, possession of cocaine, possession of marijuana, and aggravated possession of drugs (Oxycodone).
 {¶ 6} Appellant filed motions to suppress in each of his two cases, arguing in both that the warrants were not sufficiently supported by probable cause. Appellant argued that the affidavits submitted in application for the warrants were based on multiple layers of hearsay, that confidential and anonymous sources of information were uncorroborated and unreliable, and that the factual information was stale and unreliable.[1] Both motions were denied by the trial court and the two cases were joined for trial. Appellant was tried by a jury in May 2005. Under Case No. CR04-01-0047, the jury found appellant guilty of both counts of possession of cocaine. Under Case No. CR04-07-1180, the jury further found appellant guilty of Count Two, possession of cocaine in violation of R.C. 2925.11(A) (involving crack cocaine in excess of 10 grams but less than 25 grams), a felony of the second degree; and Count Four, aggravated possession of drugs (Oxycodone) in violation of R.C. 2925.11(A), a felony of the fifth degree.
 {¶ 7} Appellant was sentenced on August 5, 2005. In Case No. CR04-01-0047, the court found that minimum terms would demean the seriousness of the offenses and sentenced appellant to eight years in prison under Count One, and four years in prison under Count Two. The court ordered the sentences to run concurrently. In Case No. CR04-071-180, the court again found that minimum terms would demean the seriousness of the offenses and sentenced appellant to seven years under Count Two, ordering the sentence to run consecutive to the sentences imposed in Case No. CR04-01-0047. Under Count Four, the court sentenced appellant to 11 months in prison, and ordered the sentence to run concurrent with Count Two. Appellant filed this timely appeal, raising three assignments of error for our review.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTIONS TO SUPPRESS EVIDENCE."
 {¶ 10} Appellant argues that the evidence to support the findings by the trial court that there was probable cause to search appellant's residence under either search warrant was insufficient and incompetent. As to both search warrants, appellant argues that the affidavits contained only uncorroborated hearsay and stale information and that they are therefore insufficient to support a finding of probable cause.
 {¶ 11} In determining whether probable cause exists for the issuance of a warrant, courts employ a "totality-of-the-circumstances" test, requiring an issuing judge "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit * * * including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Statev. George (1989), 45 Ohio St.3d 325, 329, quoting, Illinois v.Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317.
 {¶ 12} In reviewing the sufficiency of probable cause in an affidavit, neither a trial court nor an appellate court may "substitute [its] judgment for that of the issuing magistrate by conducting a de novo determination" as to the existence of probable cause. George at 330. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id. at 329, citingJones v. U.S. (1960), 362 U.S. 257, 271, 80 S.Ct. 275. "Any after-the-fact scrutiny should accord great deference to the issuing judge's determination and doubtful or marginal cases should be resolved in favor of upholding the warrant." State v.Landis, Butler App. No. CA2005-10-428, 2006-Ohio-3538, ¶ 5, citing George at 329.
 {¶ 13} With regard to hearsay information in an application for a search warrant, Ohio courts have consistently found that hearsay information is relevant to the determination of probable cause. The basis of knowledge and the veracity of the person supplying the hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. State v. Prater, Warren App. No. CA2001-12-114, 2002-Ohio-4487, ¶ 7, citing George at 329. Further, the fact that the affiant's knowledge may be the result of even multiple levels of hearsay "will not per se invalidate a judge's determination of probable cause." Id. (upholding warrant where information provided to affiant came from confidential informant's discussions with defendant's son).
 {¶ 14} This court has recognized that "practical considerations often require the affiant to rely on hearsay information and/or information provided by other sources." Statev. Young, Clermont App. No. CA2005-08-074, 2006-Ohio-1784, ¶ 21. In upholding the warrant in Young, we noted that the determination of probable cause "is to be based upon a practical, common sense evaluation of all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying information." Id. We further noted that observations of fellow law enforcement officers "are plainly a reliable basis for a warrant applied for by one of their number." Id. at ¶ 21.
 {¶ 15} Appellant in this case also argues that the information included in the warrants was stale and unreliable. "It is well-established that an affidavit for a search warrant must present timely information." Id. at ¶ 23. However, no arbitrary time limit dictates when information becomes stale. Id.; Prater at ¶ 12. "The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." Id. A determination of the likelihood that the evidence sought is still in place requires consideration of variables, including "the character of the crime, the criminal, the thing to be seized, as in whether perishable and easily transferable or of enduring utility to its holder, or of the place to be searched." Id. at ¶ 13. Other variables to consider include "whether the information in the affidavit relates to a single isolated incident or a protracted ongoing criminal activity." Id.
 I. Case No. CR04-01-0047 {¶ 16} The search warrant obtained and executed on January 2, 2004, was issued based on an affidavit submitted by Agent Blackmon. In his application for the search warrant, Agent Blackmon listed incidents from March 2002, July 2002, November 2003, and December 2003, in which agents of the Butler County Sheriff's Office received information that appellant, William J. (a.k.a. Jamie) Moore, was selling crack cocaine and weapons out of his Hamilton, Ohio apartment. Each incident identified the officer who had received the information and identified the source of the information as either a reliable confidential informant or an anonymous complainant.
 {¶ 17} Also included in the affidavit was information relating to the "controlled buy" which agents of the Butler County Sheriff's agents operated and observed within the previous 72 hours. Item number 11 on the affidavit reads:
 {¶ 18} "Within the past 72 hours, Agent J. Owens of the Butler County Sheriff's Office and a Confidential Informant made contact with a third party. The third party made a phone call to someone by the name of Jaime [sic] to set up the transaction. The third party then directed the Agent the CI to the area of Gordon-Smith Blvd. Serena. Upon arrival, the third party exited the undercover vehicle with photocopied Drug Fund monies. Agent D. Blackmon then observed the third party enter the rear door of 2 Serena Apt. # 2, City of Hamilton. Agent M. Hackney then observed the third party exiting the rear door of the same residence. The third party returned to the undercover vehicle and gave Agent J. Owens approximately 12.79 grams of an off-white rock-like substance."
 {¶ 19} Agent Blackmon also included in the affidavit information that agents had confirmed that the utilities for 2 Serena Apt. # 2 were in appellant's name, and matched his social security number and date of birth.
 {¶ 20} Appellant argues that the references to information gathered by officers in 2002 and 2003 are stale and insufficient to support a finding of probable cause. Appellant further argues that the hearsay statements from unidentified sources are unreliable and do not support a finding of probable cause. These arguments are without merit. While, taken separately, the statements relating to information obtained in 2002 and 2003 are certainly stale, uncorroborated hearsay, collectively they are relevant historical information that, in a totality-of-the-circumstances review, aid in the establishment of sufficient probable cause. Further, although the incidents listed do not include a factual basis for establishing the reliability of the confidential informants or anonymous sources, the various statements continue to corroborate each other and are relevant in demonstrating a pattern of ongoing criminal activity at appellant's residence. Those facts were then again corroborated by the officers' investigation in December 2003 when they observed the "controlled buy" between the third party and appellant. See State v. Bailey, Butler App. No. CA2002-03-057,2003-Ohio-5280, ¶ 13. The facts listed in Item number 11 of Agent Blackmon's affidavit represent personal observations of the affiant and the officers involved in the investigation. Those observations are relevant and the issuing judge was justified in finding them sufficiently reliable to support a finding of probable cause. See Young at ¶ 21.
 {¶ 21} Additionally, there are sufficient facts to support the issuing judge's conclusion that the information relevant to the "controlled buy" was not stale. Although the transaction had taken place "within the last 72 hours," the likelihood that evidence related to that controlled buy would still be at appellant's apartment, or that additional illegal drugs would be stored within his residence, is sufficiently supported by the history of ongoing drug-related activity reportedly occurring at that residence. See Bailey at ¶ 12.
 {¶ 22} Based on the totality of the circumstances, we find that there was sufficient factual information provided to the issuing judge to support a finding of probable cause to issue the January 2004 search warrant. Appellant's argument with regard to this issue is without merit and overruled.
 II. Case No. CR04-07-1180 {¶ 23} The search warrant obtained and executed on July 1, 2004, was also issued based on an affidavit submitted by Agent Blackmon. The affidavit included the same information regarding the information received by Butler County Sheriff's agents in 2002 and 2003, as well as information regarding the "controlled buy" observed by agents in December 2003, and the illegal drugs and drug paraphernalia that were recovered in the execution of the January 2004 search warrant. The warrant also detailed the "controlled buy" observed by agents that same day, July 1, 2004. Item number 16 on the affidavit reads:
 {¶ 24} "Within the past 72 hours, a Confidential Informant was patted down, wired with an audio-transmitter and given photocopied Drug Funds. Agent D. Blackmon observed the CI enter the rear door of 2 Serena Apt. # 2, City of Hamilton. Soon thereafter, Agent D. Blackmon observed the CI exit from the rear door of the same residence. The CI returned to the undercover vehicle, at which time, Agent M. Hackney was given approximately 2.88 grams of an off-white rock-like substance. The substance was field tested by Agent D. Blackmon and did test presumptive for Cocaine."
 {¶ 25} As to the sufficiency of the probable cause finding with regard to this search warrant, we again find no error in the court's conclusion. While separately the stale and uncorroborated hearsay would be insufficient to support a probable cause determination, the collective totality of the information is relevant to the court's determination of probable cause. These historical statements were corroborated by the agents' observations and investigation efforts in January 2004 and again by their observation of a second "controlled buy" on July 1, 2004. The facts asserted in Item number 16, observed by officers just hours before applying for the search warrant, are sufficiently fresh and detailed to support a fair probability that evidence or contraband related to criminal activity would be found in appellant's residence. Based on the totality-of-the-circumstances, we find that there was also sufficient factual information provided to the issuing judge to support a finding of probable cause to issue the July 2004 search warrant. Finding no error in the court's denial of appellant's motions to suppress, appellant's first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE JURY FINDINGS OF GUILTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 28} Appellant contends that his convictions under Count One of Case No. CR04-010-047, and Counts Two and Four of Case No. CR04-07-1180 are against the manifest weight of the evidence and must be overturned by this court.[2] Appellant argues that the evidence presented to the jury did not support a finding of constructive possession with regard to the crack cocaine found on the coffee table in January 2004, the crack cocaine found outside the rear door of his apartment in July 2004, or the Oxycodone found inside a shirt pocket in the bedroom closet in July 2004. We disagree.
 {¶ 29} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. In order for an appellate court to reverse a conviction in a jury trial on the weight of the evidence, it must do so by a concurrence of all three judges hearing the case. Section3(B)(3), Article IV, Ohio Constitution. Further, while a reviewing court considers the credibility of the witnesses, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact, in this case, the jury, as they are in the best position to view the witnesses and observe their demeanor, gestures and voice inflections." State v. Ruhlman, Butler App. No. CA2005-05-125,2006-Ohio-2137, ¶ 6; State v. DeHass (1967),10 Ohio St. 2d 230, 231.
 {¶ 30} R.C. 2925.11(A) states that "no person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.01(K) defines possession as "having control over a thing or substance," but states that possession "may not be inferred solely from mere access to the thing or substance or through ownership or occupation of the premises upon which the thing or substance is found." Possession may be either actual or constructive. Statev. Contreras, Butler App. No. CA2004-07-181, 2006-Ohio-1894. Constructive possession exists when one is "conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." Contreras at ¶ 23. Dominion and control may be proven by circumstantial evidence alone. Id., State v. Gaefe,
Clinton App. No. CA2001-11-043, 2002-Ohio-4995, ¶ 9.
 {¶ 31} In upholding the appellant's convictions for possession in Contreras, we noted that "the discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." Id. at ¶ 24 (finding constructive possession where cocaine was found in boot of appellant's automobile passenger). Similarly, in Gaefe, this court upheld the appellant's conviction for possession of drug paraphernalia, stating that "even though the drug paraphernalia may be hidden, it may be inferred that the defendant was able to exercise dominion and control over the paraphernalia when it is easily accessible." Gaefe at ¶ 11 (finding constructive possession where pipe was found in glove box of automobile owned and occupied by appellant).
 {¶ 32} As to Count One in Case No. CR04-01-0047 regarding the crack cocaine discovered on the coffee table during execution of the January 2004 search warrant, Agent Blackmon testified at trial that upon entry by the SWAT team, appellant and Palmieri were both seated at the coffee table with rocks of crack cocaine and a digital scale with residue on the table directly in front of them. Appellant testified that the crack cocaine belonged to Palmieri, and that Palmieri brought the drugs and scale with him when he arrived a few minutes earlier. The evidence presented established that the drugs were within close proximity and in open view to appellant and appellant admitted to knowing of their presence. Further, as argued by the state, the mere presence of another person, namely Palmieri, does not mean that the jury was required to believe appellant's testimony that the drugs belonged to Palmieri exclusively. See State v. Maag, Hancock App. Nos. 5-02-32, 5-02-33, 2005-Ohio-3761, ¶ 33 (noting that possession may be either individual or joint). After reviewing the record and the testimony presented at trial, we cannot say that the jury lost its way and created such a manifest miscarriage of justice that appellant's conviction must be overturned.
 {¶ 33} As to Count Two in Case No. CR04-07-1180 regarding the baggie of crack cocaine discovered outside the rear door of appellant's apartment during execution of the July 2004 search warrant, Agent Hackney testified at trial that he was positioned outside the rear door of appellant's apartment when the SWAT team entered through the front door to execute the search warrant. Agent Hackney testified that, almost simultaneous with the SWAT team's entry, he heard the rear door open, and "a bag flew out in front of me into the yard" and that he then heard the door shut again. Agents Hackney and Blackmon also both testified that, upon entry into the rear door of the apartment, they observed appellant on the floor immediately inside the door, being handcuffed by other SWAT team agents. Agent Blackmon also testified that the only other individual located in appellant's apartment was found in the living room area on the other side of the apartment.
 {¶ 34} And finally, regarding Count Four in Case No. CR04-07-1180, possession of Oxycodone, Agent Blackmon testified that the tablet was discovered wrapped in cellophane in the front pocket of a shirt in the closet of appellant's bedroom. In fact, during his own testimony, appellant admitted that the tablet belonged to him, claiming that he had "forgotten all about it."
 {¶ 35} We similarly cannot say that the jury "clearly lost its way" in concluding that appellant possessed both the baggie of crack cocaine thrown from his apartment door and the tablet of Oxycodone found in the pocket of a shirt in his closet in July 2004. The testimony of both the Butler County SWAT team agents and the defendant himself provided sufficient circumstantial evidence regarding appellant's knowledge of both items. There was also a great deal of testimony and evidence presented regarding the drug-related items found in appellant's apartment, as well as the identified drug funds found in appellant's pocket, and the jury could have reasonably concluded that appellant had knowingly possessed both items. Appellant's assignment of error is overruled.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE TRIAL COURT ERRED IN IMPOSING A SENTENCE ABOVE THE MINIMUM TERM."
 {¶ 38} Appellant's final assignment of error challenges the sentences imposed by the trial court as contrary to law. Specifically, appellant challenges the court's imposition of nonminimal and consecutive prison terms as violative of Blakelyv. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531.
 {¶ 39} We note that appellant was sentenced under portions of Ohio's statutory sentencing scheme which have since been deemed unconstitutional by the Ohio Supreme Court. State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. Among these sections were R.C.2929.14(B) and R.C. 2929.19(B)(2) which required judicial fact-finding before the imposition of sentences beyond the minimum term. Foster at ¶ 97-99. The court severed the sections from the remaining statutory provisions. Id. The court further found that R.C. 2929.14(E)(4) and R.C. 2929.41(A) required judicial fact-finding before the imposition of consecutive sentences were also unconstitutional, severing those provisions as well. Id. As a result of the court's severance of these provisions from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required. Foster at ¶ 100.
 {¶ 40} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing.Foster at ¶ 104. The state agrees that appellant was sentenced under statutes now deemed unconstitutional and must be resentenced. Consequently, we remand this case for resentencing consistent with Foster. The trial court will have full discretion to impose sentences within the statutory range and is no longer required to make findings or give reasons for imposing consecutive or more than minimum sentences. Appellant's third assignment of error is sustained.
 {¶ 41} Having reviewed the assignments of error, we affirm appellant's convictions for possession of cocaine and aggravated possession of drugs. However, pursuant to Foster, we reverse the court's sentencing decisions and remand this matter for resentencing in accordance with this opinion.
 {¶ 42} Judgment reversed as to sentencing only.
Powell, P.J., and Young, J., concur.
[1] We note that no written motion for appellant's second motion to suppress appears in the record from the trial court. Only a transcript of the hearing on the motion appears in the record and our references to appellant's arguments under his second motion to suppress will therefore refer to that hearing.
[2] We note that while appellant refers to "Count Two" in Case No. CR04-01-0047, he appears to in fact be challenging his conviction under Count One, as it is Count One which pertains to the "crack cocaine" found on his coffee table, rather than the powder cocaine found in his bedroom closet. We will therefore refer to Count One with regard to the argument presented to this court.