OPINION
{¶ 1} P.S., appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court overruled in part and sustained in part his objections to the magistrate's decision, ultimately adopting the magistrate's decision finding delinquency based upon gross sexual imposition, in violation of R.C. 2907.05, but modifying the magistrate's decision and dismissing the offense of rape, in violation of R.C.2907.02.
 {¶ 2} At the time of the incident in question, sometime in the summer of 2004, M.G. was a ten-year-old girl, and appellant was a fifteen-year-old boy. Along with several *Page 2 
friends, M.G. and appellant were playing hide-and-seek in the dark in the basement of appellant's parents' home. Appellant took M.G.'s hand and told her they were going to hide under a bed. Appellant moved the bed from the wall, and the two hid underneath the bed. While under the bed, appellant pulled down his pants, touched M.G.'s vagina, and put M.G.'s hand on his penis. Although M.G. told appellant to stop and pulled her hand away from his penis, appellant eventually ejaculated onto the carpet. Appellant's brother, who was "it," could not find the two, and they both came out from under the bed, each of them pulling up their own pants.
 {¶ 3} In November 2004, M.G. discussed what had happened with some of her friends, and eventually a classmate told a teacher at school. The school contacted Doug Dietz, a detective with the Westerville Police Department, and he investigated the incident.
 {¶ 4} On December 6, 2004, two complaints, in an action different than the present case, were filed in the Franklin County Juvenile Court, alleging appellant to be delinquent for having committed two counts of rape and two counts of kidnapping. Westerville police obtained a search warrant to collect DNA samples from both appellant and appellant's basement, and, on April 28, 2005, Westerville police executed the warrant, collecting DNA swabs from appellant and collecting DNA samples from under the bed in the basement.
 {¶ 5} On May 10, 2005, a hearing was held before a magistrate, at which the magistrate granted the oral and written request of the State of Ohio ("state"), appellee, to amend the complaint alleging rape and strike the reference to force, as it was an unnecessary element given the victim's age. Appellant then orally moved the magistrate *Page 3 
to suppress all evidence seized pursuant to the search warrant, claiming (1) the juvenile court had exclusive jurisdiction once the complaint was filed; thus, no other judge or magistrate could have signed the search warrant; (2) the affidavit used to support the search warrant alleged force, and the state had amended the complaint to remove the element of force, which might have been relied upon in issuing the search warrant. The magistrate announced orally that it would suppress the evidence as to only the complaint alleging rape, and the state immediately made an oral motion to dismiss both complaints without prejudice. The magistrate then granted the state's motion to dismiss and issued an order.
 {¶ 6} The state apparently then filed a request for findings of fact and conclusions of law and objections to the magistrate's order, and, on June 21, 2005, the trial court denied the objections, finding that the state could not file any objections when charges were no longer pending.
 {¶ 7} On June 27, 2005, the state filed a complaint in the present case, alleging two counts of rape, two counts of gross sexual imposition, and one count of kidnapping. On November 8, 2005, appellant filed a motion in limine, claiming the doctrine of res judicata prohibited the state from introducing any of the DNA evidence at trial, based upon the magistrate's finding in the prior action that the evidence obtained during the search warrant should be suppressed. A hearing on the motion in limine was held November 15, 2005, and the magistrate found that his prior indication to grant appellant's motion to suppress in the earlier case was not a final order, so the DNA evidence would be admissible in the current matter. Appellant filed an objection to the magistrate's decision. A hearing on the objections was held before the trial court, and, on May 3, 2006, *Page 4 
the trial court overruled appellant's objections, finding that there had been no final judgment to grant the motion to suppress in the prior action, so res judicata and collateral estoppel did not apply.
 {¶ 8} While the objections were pending before the trial court, appellant had filed a motion to suppress on November 23, 2005, asserting that the information used as a basis to grant the search warrant had been stale. A hearing on the motion to suppress was held, and, on August 16, 2006, the magistrate denied the motion to suppress.
 {¶ 9} On various dates from August 8 through August 30, 2006, an adjudicatory hearing was held before the magistrate. On November 29, 2006, the magistrate found appellant to be delinquent with regard to one offense of rape and one offense of gross sexual imposition. Appellant filed objections to the magistrate's decision. On March 23, 2007, the trial court sustained appellant's objection, insofar as the evidence was insufficient to prove appellant had committed rape, but overruled appellant's remaining objections and adopted the magistrate's decision in all other respects. Appellant appeals the judgment of the trial court, asserting the following three assignments of error:
 [I.] THE TRIAL COURT COMMITS PREJUDICIAL ERROR IN DENYING A MOTION TO SUPPRESS A SEARCH WARRANT AFTER THE STATE FAILED TO APPEAL AN ADVERSE RULING SUPPRESSING THE WARRANT, CONTRA THE DOUBLE JEOPARDY PROVISION OF THE FIFTH AMENDMENT AND THE FOURTH, SIXTH AND FOURTEENTH AMENDEMENTS TO THE U.S. CONSTITUTION.
 [II] WHERE THE TIME OF THE ISSUANCE OF A SEARCH WARRANT HAS NO RELATIONSHIP TO THE INCIDENT IN QUESTION, A TRIAL COURT COMMITS PREJUDICIAL ERROR IN DENYING A MOTION TO SUPPRESS, CONTRA THE FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION. *Page 5 
 [III] WHEN A TRIAL COURT REVERSES A MAGISTRATE'S DECISION ON THE PRIMARY COUNT, AND AFFIRMS ON A RELATED COUNT, THE CASE NEEDS TO BE REMANDED FOR A DETERMINATION OF THE SUFFICIENCY OF THE EVIDENCE ON THE RELATED COUNT, TO COMPORT WITH THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION. THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW.
 {¶ 10} Appellant argues in his first assignment of error that the trial court erred when it failed to apply collateral estoppel to suppress evidence with regard to the second complaint against appellant, after the magistrate had previously granted the motion in limine to suppress evidence with regard to the original complaints against appellant. The doctrines of res judicata and collateral estoppel preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. Vectren Energy Delivery of Ohio, Inc. v. Pub.Util. Comm., 113 Ohio St.3d 180, 186, 2006-Ohio-1386. Here, appellant asserts that, because the magistrate indicated orally at its May 10, 2005 hearing on the original complaints against appellant that he was going to grant appellant's motion in limine to suppress the evidence seized at appellant's home, the state could not use the evidence in the subsequent action against appellant. We disagree.
 {¶ 11} The trial court found that the state was not precluded from using the evidence in the subsequent action because the magistrate's determination to suppress the evidence in the original action never became a final order of the court, as the state dismissed its original complaints against appellant before the magistrate's decision could be reduced to writing and adopted by the trial court. We concur with the trial court's reasoning. Under Ohio law, the doctrine of res judicata embraces the doctrine of collateral *Page 6 
estoppel. Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381. Pursuant to res judicata doctrine, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id., at syllabus. Accordingly, "[t]he doctrine of collateral estoppel cannot be invoked when there is no final order."Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St.3d 470,2006-Ohio-6553, paragraph two of syllabus. See, also, Cote v.Eisinger, Wayne App. No. 05CA0076, 2006-Ohio-4020, at ¶ 8 (before res judicata/collateral estoppel can apply one must have a final judgment). For a magistrate's order to become final, the trial court must "adopt, reject, or modify the magistrate's decision and enter judgment accordingly." Loretta R.G. v. Michael O. (Mar. 8, 2001), Lucas App. No. L-00-1333 (referring to magistrate's rulings under Civ.R. 53[E], which is identical to Juv.R. 40[E]). A trial court may give a magistrate's decision immediate effect by adopting the decision promptly after it is issued. Hurst v. Liberty-Bel, Inc. (1997), 117 Ohio App.3d 138, 147. Nevertheless, until the court specifically adopts, rejects, or modifies the magistrate's decision, no final decision exists. Ivywood Apts. v.Bennett (1976), 51 Ohio App.2d 209, 213; Loretta R.G., supra. Ashe v.Swenson (1970), 397 U.S. 436, 90 S.Ct. 1189, the main authority relied upon by appellant in the present case, likewise provides that, in order for collateral estoppel to apply, there must be a "valid and final judgment." Id., at 443.
 {¶ 12} Here, the only decision issued by the magistrate was one dismissing the complaints without prejudice. This decision was the only one adopted by the trial court. The magistrate never reduced its oral pronouncement to writing, so the trial court could not adopt such pronouncement. Clearly, the magistrate's oral pronouncement is *Page 7 
insufficient to apply the doctrine of collateral estoppel. It is axiomatic that a court speaks only through its journal entries, and not through mere oral pronouncements. State ex rel. Indus. Comm. v. Day
(1940), 136 Ohio St. 477, paragraph one of the syllabus. Thus, because the magistrate never issued a decision granting appellant's motion in limine to suppress, and the trial court never adopted the magistrate's finding, the magistrate's oral pronouncement was not a final order to which collateral estoppel could apply. Therefore, appellant's first assignment of error is overruled.
 {¶ 13} Appellant argues in his second assignment of error that the trial court erred when it failed to find that the information relied upon to obtain the search warrant was "stale." Thus, appellant asserts, the search warrant was not based upon probable cause. In determining whether probable cause exists to support the issuance of a warrant, courts employ a "totality-of-the-circumstances" test, which requires an issuing judge "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit * * * including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Moore, Butler App. No. CA2005-08-366, 2006-Ohio-4556, at ¶ 11, quoting State v.George (1989), 45 Ohio St.3d 325, 329.
 {¶ 14} In reviewing a finding of probable cause in a search warrant affidavit, a reviewing court may not substitute its own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. George, at 330. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area *Page 8 
should be resolved in favor of upholding the warrant. Id. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.Moore, at ¶ 12.
 {¶ 15} Here, appellant's sole argument as to probable cause in issuing the search warrant is that the information to support the search warrant was stale based upon the ten-month period that elapsed between the time of the incident, which was sometime in the summer of 2004, and the execution of the search warrant, which was on April 28, 2005. An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. State v.Hollis (1994), 98 Ohio App.3d 549, 554, citing State v. Jones (1991),72 Ohio App.3d 522, 526. While there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the person or premises to be searched. Id., quoting Jones, at 526. If a substantial period of time has passed between the commission of the crime and the search, the affidavit must contain facts that would lead the magistrate to believe that the evidence or contraband are still on the premises before the magistrate may issue a warrant. State v. Yanowitz (1980),67 Ohio App.2d 141, 147. In determining whether the information contained in the affidavit is stale, courts should consider such factors as: (1) the character of the crime; (2) the criminal; (3) the thing to be seized, as in whether it is perishable and easily transferable or of enduring utility to its holder; (4) the place to be searched; and (5) whether the information in the affidavit relates to a single isolated incident or protracted ongoing criminal activity. State v. Prater, Warren App. No. CA2001-12-114, 2002-Ohio-4487, at ¶ 13. *Page 9 
 {¶ 16} In the present case, Detective Dietz filed an affidavit to support the issuance of the search warrant on April 28, 2005. In the affidavit, Dietz averred the following:
 In the summer of 2004, while in the basement of * * *, Franklin County, Ohio * * *, sixteen-year-old [appellant] raped ten-year-old [M.G.] by putting his finger inside of her vagina and attempting to force his penis inside of her vagina. According to the ten-year-old victim, white stuff came out of the end of [appellant's] penis and went onto the carpet. This search warrant is being requested in order to obtain a comparative sample of DNA from a swab of the interior [of appellant's] mouth for comparison of any evidentiary DNA collected from the carpeted area of the basement at * * *, Franklin County, Ohio * * *.
 BASED UPON ALL OF THE FOREGOING, AFFIANT BELIEVES, AND HAS PROBABLE CAUSE TO BELIEVE THAT COMMISSION OF A CRIMINAL OFFENSE AS DESCRIBED ABOVE, HAS BEEN, AND IS BEING CONDUCTED AT * * *, OHIO * * * AND FURTHER THAT ADDITIONAL EVIDENCE OF SUCH CRIMINAL OFFENSE WILL BE FOUND AT * * *, OHIO * * *
 {¶ 17} We find the trial court did not err in finding there was probable cause to issue the search warrant. There was at least a "fair" probability that appellant's semen would be found in his basement, even ten months after the incident. Detective Dietz's affidavit indicated that the victim stated the "white stuff from appellant's penis had landed on the carpet. Although the approximately ten months that had passed might be deemed "a substantial period" in some circumstances, the testimony of Brian Bowen, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI"), would support a finding that the magistrate could find probable cause to believe that evidence of appellant's semen was still on the premises. Bowen testified that, when semen is dry, it can last "tens of years." Bowen testified that the BCI currently has a semen sample that is 22 years old that testing works on today just as well as it would have 22 years ago. *Page 10 
Further, Bowen testified that the environment under which the semen or DNA existed prior to collection could also affect degradation. He stated that a dry semen sample is generally resistant to degradation, although temperature, humidity, and moisture could affect it. However, here, there was no evidence that the basement in question was unusually hot, humid, or damp.
 {¶ 18} Further, Detective Dietz indicated that the sample was taken from under a bed, which he had to move to retrieve the sample. This secluded location would have protected the semen for the intervening ten months. Thus, insofar as to whether the semen was of a "perishable" nature, it was not, at least for the ten-month period at issue in the present case. Also, as it was a dry substance that would be prone to adhere to the carpet fibers, the semen was not easily transferable. The general inaccessibility to the location where the sample was collected would also support a determination that the semen would still exist in the same place ten months later.
 {¶ 19} Appellant implies that contamination could have occurred during the intervening ten months, rendering the DNA evidence unreliable. However, the integrity of the scene was protected from daily foot traffic, contact, and contamination. The dried semen was located under a low-lying bed in a residential basement. In such a location, contamination would be unlikely and highly unsusceptible to contamination from other, different events, absent further evidence that appellant had a habit or prior course of conduct that would have resulted in his semen being deposited in such a peculiar place on other occasions unrelated to the present case. That the area was, in fact, generally protected was confirmed by appellant's mother, who testified that the bed was difficult to move, and the area had not been cleaned recently. For the foregoing reasons, we find *Page 11 
there was a substantial basis for probable cause to support the issuance of the search warrant. Therefore, appellant's second assignment of error is overruled.
 {¶ 20} Appellant argues in his third assignment of error that, when the trial court found there was insufficient evidence to sustain a delinquency finding on the rape offense based upon the lack of credibility of M.G.'s testimony, it should have remanded the matter back to the magistrate to determine the sufficiency of the evidence on the gross sexual imposition offense. Appellant contends that, because the trial court found M.G.'s credibility lacking with regard to the rape offense, and the magistrate relied upon the demeanor of M.G. in finding sufficient evidence for the gross sexual imposition count, the two determinations are inapposite.
 {¶ 21} The complaint against appellant alleged rape, which would be a violation of R.C. 2907.02, if committed by an adult. R.C. 2907.02
provides, in pertinent part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 * * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 * * *
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
R.C. 2907.01(A) provides, in pertinent part:
 "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus *Page 12 
between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
The complaint in the present case alleged:
 [APPELLANT] DID ENGAGE IN SEXUAL CONDUCT WITH [M.G.] AND THE SAID [APPELLANT] PURPOSELY COMPELLED [M.G.] TO SUBMIT BY FORCE OR THREAT OF FORCE AND THE SAID [M.G.] IS LESS THAN THIRTEEN (13) YEARS OF AGE. TO WITH: TEN (10) YEARS OF AGE. TO WIT: [APPELLANT] FORCEFULLY PULLED [M.G.'S] PANTS AND UNDERPANTS DOWN AND INSERTED HIS FINGER INTO [M.G.'S] VAGINA.
 {¶ 22} Although the magistrate found appellant delinquent for having committed rape, the trial court found:
 [M.G.'s] testimony regarding [appellant] inserting his finger in her vagina was not convincing. When first asked what [appellant] did with his hand, [M.G.] responded that he "just rubbed" her vagina. * * * It was only after the prosecutor specifically asked [M.G.] if "[appellant] ever touched[ed] the inside of [her] private?" that [M.G.] responded "yes." * * * In addition, [M.G.] testified that she had spoken with several individuals about the incident, including her Mother, the police, the prosecutor, and someone at the Children's Advocacy Center. * * * The Court finds [M.G.'s] first answer that [appellant] "just rubbed" her vagina to be the most credible, which sheds sufficient doubt on the balance of her testimony regarding whether [appellant] inserted his finger into her vagina. Therefore, this trier of fact finds reasonable doubt as to the Rape count. Thus, there was not sufficient evidence to support a finding of delinquency based on the Rape count, and the finding of delinquency was against the manifest weight of the evidence.
 {¶ 23} Initially we note that, although in its decision the trial court discussed its analysis of the rape offense in terms of a manifest weight of the evidence analysis and insufficiency of the evidence analysis, when reviewing objections to a magistrate's *Page 13 
decision, in the context of Civ.R. 53, which is analogous to Juv.R. 40, the trial court has the ultimate authority and responsibility over the magistrate's findings and rulings. Hartt v. Munobe (1993),67 Ohio St.3d 3, 5-6. The court must undertake an independent review of the magistrate's report to determine any errors. Id. The findings of fact, conclusions of law, and other rulings of a magistrate before and during trial are all subject to the independent review of the trial judge. Id. Thus, the trial court does not sit in the position of an appellate court when reviewing a magistrate's decision. Sweeney v. Sweeney, Franklin App. No. 06AP-251, 2006-Ohio-6988, at ¶ 14. The magistrate's role is to assist the trial court, and the magistrate's decision is only a recommendation. Id., citing Wolff v. Kreiger (1976), 48 Ohio App.2d 153,155-156. The trial court must conduct a de novo review of the facts and conclusions contained in the magistrate's decision. Id., citingDeSantis v. Soller (1990), 70 Ohio App.3d 226, 232. The trial court, as the ultimate finder of fact, must make its own factual determinations through an independent analysis of the evidence and should not adopt the findings of the magistrate unless the trial court fully agrees with them. Id. The trial court has the obligation to determine whether the magistrate has properly determined the facts and applied the appropriate law. If, in the judgment of the trial court, the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate. Id., citing Coronet Ins. Co. v. Richards (1991),76 Ohio App.3d 578, 585.
 {¶ 24} With these tenets in mind, appellant's contention is that, because the trial court found M.G.'s testimony not credible with regard to whether appellant penetrated M.G.'s vagina with his finger, the trial court's decision was at odds with the magistrate's credibility determination, and an issue arises as to whether the gross sexual imposition *Page 14 
count should stand. Although the magistrate did not specifically discuss the credibility of M.G. with respect to her testimony on the penetration issue, it did make the general statement, "having had an opportunity to view the demeanor of the witnesses, the Court finds that [appellant] is a delinquent[.]" Thus, coupling this with the magistrate's conclusion that appellant had committed rape, we can presume the magistrate did find M.G.'s testimony credible.
 {¶ 25} Regardless, appellant's argument must be rejected. Although the actual trier of fact present during the testimony is generally in the better position to judge the credibility of witnesses, State v.Gibbs (1999), 134 Ohio App.3d 247, 256, the trial court in this case appropriately considered credibility. As noted above, the trial court was obligated to independently review the evidence and to substitute its judgment for that of the magistrate if it disagreed with the magistrate's decision. See Sweeney, at ¶ 15. Although the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions. Id., citing DeSantis, at 233;Coronet, at 585.
 {¶ 26} Importantly, the trial court did not find all of M.G.'s testimony not credible. The trial court found only that her testimony relating to whether appellant's finger penetrated her vagina was not credible. Gross sexual imposition, under R.C. 2907.05, does not require "sexual conduct," i.e., penetration, but only "sexual contact," i.e., touching, under R.C. 2907.01(B). Therefore, merely because the trial court found the portion of her testimony related to penetration not credible does not necessitate a finding that her testimony with regard to touching was not credible. In reviewing the credibility of *Page 15 
M.G., the trial court was free to believe all, part or none of her testimony. See State v. Antill (1964), 176 Ohio St. 61. This would be particularly true under the circumstances here, in which the trial court is reviewing a decision of a magistrate. As explained above, the trial court is vested with the responsibility of independently reviewing the proceedings before the magistrate and determining whether the magistrate properly determined the factual issues and correctly applied the law. See Juv.R. 40(D)(4)(d). Therefore, we find the trial court was clearly within its authority to find M.G. not credible only with regard to penetration relevant to the rape offense, while also finding her credible with regard to touching relevant to the gross sexual imposition offense. Thus, appellant's third assignment of error is overruled.
 {¶ 27} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 FRENCH and McGRATH, JJ., concur. *Page 1