OPINION
{¶ 1} Appellant Gregory Scott Nottingham challenges his conviction in the Belmont County Court of Common Pleas on one count of fleeing from a police officer after being signaled to stop, a third degree felony. Appellant drove at a high rate of speed through Bridgeport, drove the wrong way in a highway exit lane, and was eventually forced to a stop by multiple police cruisers. He was convicted on the charge and was given two years of community control sanctions. Appellant contends that the complaint should have been dismissed on speedy trial grounds, that his trial counsel was ineffective, that a surprise witness should not have been allowed to testify, and that the prosecutor withheld photos that were relevant to the case. The record does not support any of these arguments. Appellant also raises a manifest weight of the evidence argument, but the two police officers who testified provided ample proof of the crime. Appellant's conviction and sentence in the Belmont County Court of Common Pleas is affirmed.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY {¶ 2} On December 11, 2004, the Bridgeport Police Department received a call sometime around 10:00 p.m. alleging that someone was soliciting for money, i.e., panhandling, in the parking lot of the Sunoco gas station. Sergeant Andrew Klotz was dispatched to the scene, and a person at the scene indicated that the complaint was phoned in regarding Appellant. Appellant was 41 years old at the time of the incident. Appellant was seen walking to his car in the nearby parking lot at Papa *Page 3 
Johns Restaurant, and Sgt. Klotz followed him and approached him. As Appellant was starting his car, Sgt. Klotz, wearing his normal police uniform, said he wanted to talk to him and asked if he had just been in the Sunoco parking lot. Appellant began to park his car, opened the door as if he was about to get out, then slammed the door and drove off at a high rate of speed. (Tr., p. 53.) The speed limit in the area was 25 m.p.h. (Tr., p. 58.)
 {¶ 3} Sgt. Klotz ran back to his cruiser, called the dispatcher to report Appellant's license plate number and to report Appellant was driving a white Ford Focus with an "84 Lumber" sticker on it, and drove off to follow Appellant. As Sgt. Klotz drove toward the nearby 84 Lumber store, Appellant came speeding by him in the opposite direction. Sgt. Klotz turned around to follow Appellant and activated his cruiser emergency lights. Appellant came to a stop sign, and appeared to be getting out of his car. Sgt. Klotz approached the vehicle, but Appellant again slammed the car door and drove off at a high rate of speed. (Tr., p. 58.) At this point, Sgt. Klotz turned on his siren.
 {¶ 4} Sgt. Klotz noticed the other drivers on the street taking evasive action to avoid being hit by Appellant, who was going 40 m.p.h. on residential streets posted at 25 m.p.h. Appellant also drove through a number of stop signs without stopping. Appellant merged onto S.R. 7 using the wrong ramp, entering the highway southbound using the northbound exit ramp. (Tr., p. 63.) Five or six cars were coming off the ramp, and they had to swerve to the curb to avoid collision. Sgt. Klotz *Page 4 
tried to block Appellant's path, but Appellant hit the cruiser, drove up on the curb, and made it to the highway. Appellant made a U-turn and drove north on the highway.
 {¶ 5} Sgt. Klotz followed him north, driving 85-90 m.p.h. in a 50 m.p.h. zone. They drove about a mile up the highway when Appellant swerved around a car attempting to cross the road at an intersection. Appellant turned around and headed south on S.R. 7. He drove 400-500 feet, crossed over the concrete median, and turned around again to go northbound. Again, other traffic on the highway had to swerve to miss colliding with him. Appellant performed a few more U-turns on S.R. 7 in a similar fashion. At this point, two patrol cars from the Martins Ferry Police Department entered the highway and forced Appellant to exit into the parking lot of the Bob Evans Restaurant. The police vehicles blocked Appellant's car from leaving the parking lot. Appellant jumped out of his car. Sgt. Klotz and two other officers, Patrolman William Ghent and Sergeant Trigg, exited their police cruisers and approached Appellant. They told Appellant to get on the ground. Appellant struggled with them, but the officers wrestled him down and had him handcuffed.
 {¶ 6} The chase had lasted about 15 minutes. The officers smelled an odor of alcoholic beverage coming from Appellant when they approached him at the end of the chase. Appellant also acted confused and his eyes were very red.
 {¶ 7} Appellant was indicted on January 13, 2005, on one count of felony fleeing a police officer in a motor vehicle causing a substantial risk of serious harm to persons or property, a third degree felony pursuant to R.C. 2921.331(B) and (C)(5)(a)(ii). The court appointed counsel and set bond at $ 5,000, but Appellant did *Page 5 
not pay the bond at this time. Trial was set for March 1, 2005. At a status conference on February 28, 2005, the trial court sua sponte ordered a competency exam based on Appellant's behavior in the courtroom. (3/4/05 Judgment Entry.) Appellant posted bond on March 8, 2005.
 {¶ 8} Trial was postponed due to the competency exam. The competency hearing took place on April 25, 2005, and the court determined that Appellant could stand trial, which was reset for July 7, 2005.
 {¶ 9} A status conference was held on May 9, 2005. It was reported at conference that Appellant was being held in the Belmont County Court, Western Division, in St. Clairsville, on bad check charges.
 {¶ 10} On May 11, 2005, Appellant filed a motion to dismiss on speedy trial grounds.
 {¶ 11} On June 14, 2005, Appellant filed a motion to continue both the next status hearing and the trial due to conflicts in defense counsel's schedule. The court reset the status conference to July 18, 2005, at 9:00 a.m., in part to hear the motion to dismiss. Trial was set for August 30, 2005. Appellant filed a subpoena for Paula Houston, the court administrator, to appear at the 9:00 a.m. hearing on July 18, 2005. The court quashed the subpoena on July 6, 2005, but allowed Appellant to depose Paula Houston at 2:00 p.m. on July 18, 2005. This deposition required yet another rescheduling of the final status conference and the trial, but no date was set at this time. The record does not indicate that the deposition ever took place, and Appellant confirms in his appellate brief that it did not. *Page 6 
 {¶ 12} On September 2, 2005, the court reset trial for October 4, 2005. On September 28, 2005, the court overruled the motion to dismiss. On October 4, 2005, Appellant filed another motion for continuance of trial. Trial was reset to October 27, 2005, at which time trial actually took place. Two of the three police officers testified at trial, and the jury found Appellant guilty. On December 8, 2005, the court sentenced Appellant to two years of community control sanctions. This timely appeal was filed on December 14, 2005.
 ASSIGNMENT OF ERROR NO. 1 {¶ 13} "The Court erred in denying Defendant-Appellant's Motion to Dismiss as Defendant had not been prosecuted within Speedy Trial requirements of law."
 {¶ 14} Appellant argues that the state failed to bring him to trial within the statutory speedy trial time period, and that the trial court should have sustained his May 11, 2005, motion to dismiss. Appellant was required to be brought to trial within 270 days for the felony charge of failure to comply with the order of a police officer. See R.C.2945.71(C)(2). Each day that a defendant is incarcerated solely on the pending charges counts as three days for speedy trial purposes. R.C.2945.71(E). The standard of review of speedy trial errors is to count the days as directed in R.C. 2945.71 et seq. See, e.g., Cleveland v.Jovanovic, 153 Ohio App.3d 37, 2003-Ohio-2875, 790 N.E.2d 824, ¶ 7. The speedy trial clock starts running after a person has been indicted, arrested, or otherwise formally accused of a crime. State v.Collins (1997), 118 Ohio App.3d 73, 75, 691 N.E.2d 1109. The speedy trial clock stops on the day the defendant files a motion to dismiss based on a speedy trial violation, and *Page 7 
time is tolled while the motion is resolved. State v. Jones (1997),119 Ohio App.3d 59, 66, 694 N.E.2d 505. However, there are a variety of other situations that toll the speedy trial time. See R.C. 2945.72.
 {¶ 15} Appellant was arrested on December 11, 2004, and remained incarcerated. Appellee concedes that the time from December 11, 2004, until the date the court ordered a competency hearing, February 28, 2005, were chargeable to the state, for a total of 80 days. These days are counted as three days each because Appellant was incarcerated solely on the pending charges, for a total of 240 days chargeable to the state.
 {¶ 16} On February 28, 2005, a status hearing was held before the trial judge, and the judge sua sponte ordered a competency hearing based on Appellant's behavior at the status conference. (3/4/05 Judgment Entry.) It is well-established in caselaw and by statute that a review of the mental competency of the accused to stand trial tolls the time in which the accused must be brought to trial. State v. Prim (1999),134 Ohio App.3d 142, 157, 730 N.E.2d 455; R.C. 2945.72(B). Since the defendant has a right to a hearing when his competency to stand trial is challenged, the speedy trial tolling period necessarily includes the time needed to hold the hearing. R.C. 2945.37(A) states that either the prosecutor, the defendant, or the court itself may raise the issue of a defendant's competency to stand trial. There is nothing in the record contradicting the trial judge's statement that Appellant's behavior at this hearing warranted the judge to call for a competency hearing. There is no transcript of the February 28, 2005, hearing in the record, and without a *Page 8 
transcript, the trial court's judgment is presumed to be correct.Columbus v. Link (1998), 127 Ohio App.3d 122, 127, 711 N.E.2d 1046.
 {¶ 17} The competency report was filed with the court and a competency hearing was set for April 25, 2005. There is no transcript of that hearing in the record. The trial court prepared a journal entry on April 25, 2005, concluding that Appellant was competent to stand trial. Based on the record on appeal, the time between February 28, 2005, and April 25, 2005, is tolled for speedy trial purposes.
 {¶ 18} After the competency evaluation, the trial court reset trial to the earliest possible trial date, which was July 7, 2005. It has often been held that reasonable trial delays due to scheduling conflicts, crowded dockets, or the lack of an available courtroom, toll the speedy trial clock. State v. Lee (1976), 48 Ohio St.2d 208, 210,357 N.E.2d 1095; State v. Glass, 3rd Dist. No. 2-04-01, 2004-Ohio-4402; R.C.2945.72(H). There is nothing in the record contradicting or challenging the reasonableness of the new trial date, and thus, the period from April 25, 2005, until July 7, 2005, is also tolled. The state continued to have 30 days of trial time remaining on July 7, 2005.
 {¶ 19} It should also be noted that Appellant posted his bond on March 8, 2005, but was rearrested on other charges on April 27, 2005, and appears to have been released on those new charges May 9, 2005. The triple count provision for calculating speedy trial time does not apply from April 27, 2005, to May 9, 2005, because Appellant was not being held on the charges at issue in this appeal. The triple count provision is only triggered when the defendant is being held solely on the *Page 9 
pending charge. R.C. 2945.71(E); State v. MacDonald (1976),48 Ohio St.2d 66, 2 O.O.3d 219, 357 N.E.2d 40, paragraph one of the syllabus (construing former R.C. 2945.71(D), now (E)). Thus, the triple count provision does not apply from April 27, 2005, to May 9, 2005, even though Appellant was incarcerated, because Appellant was not being held solely on the pending charge in the instant case.
 {¶ 20} Appellant filed his motion to dismiss on May 11, 2005. It is axiomatic that the filing of a motion to dismiss on speedy trial grounds tolls the speedy trial clock from running until the motion can be resolved by the court. State v. McCall, 152 Ohio App.3d 377,2003-Ohio-1603, ¶ 25. The speedy trial clock began running again on April 25th, but was immediately tolled by the reasonable delay of setting a new trial date. Even if it had not been tolled on April 25, 2005, the speedy trial clock would surely have been tolled by Appellant's motion to dismiss on May 11, 2005. At most, another 17 speedy trial days would have elapsed. Yet, on April 25th, the state still had 30 days left of speedy trial time to use. Based on the record, even if the period between April 25th and May 11th was not tolled by the reasonable resetting of the trial date to July 7, 2005, the state had not yet used up its speedy trial days by May 11th, which was the day that Appellant filed the motion to dismiss on speedy trial grounds. Therefore, the trial court was correct in overruling the motion to dismiss because the speedy trial time had not run when the motion was filed on May 11, 2005.
 {¶ 21} Appellant also argues that the time between the filing of his motion to dismiss (May 11, 2005), until the time that the trial court ruled on the motion on *Page 10 
September 27, 2005, should also have been charged against the state. This is a different argument than was raised at trial. Although Appellant perfunctorily renewed his speedy trial motion at the beginning of trial on October 27, 2005, he did not raise this new basis as a reason for renewing the motion. Appellant simply renewed the previous motion to dismiss. The trial court summarily dismissed the renewed motion. Thus, there is no discussion at all in the trial court record of the issue that Appellant now raises on appeal. Assuming arguendo that this argument has not been waived by Appellant, the record does not reflect a speedy trial error based on events occurring after May 11, 2005.
 {¶ 22} The record provides an explanation as to why four months elapsed prior to a decision on the motion to dismiss. Appellant filed his motion on May 11, 2005. The prosecutor responded on May 19, 2005. A status conference was scheduled for June 20, 2005, to resolve the motion to dismiss. On June 14, 2005, Appellant filed a motion to delay trial and to move the status conference to July 18, 2005, which was sustained. A status hearing was set for 9:00 a.m. on July 18, 2005, and trial was reset for August 30, 2005. Appellant subsequently attempted to subpoena the court administrator to appear at 9:00 a.m. on July 18, 2005, apparently to find additional support for his motion to dismiss. Appellant appears to have been interested in finding out if certain hearing dates scheduled by the court were, in fact, the first available dates. The court quashed the subpoena on July 6, 2005, because the court administrator could not appear at 9:00 a.m. In an apparent attempt to accommodate Appellant, he was given a time and date in order to depose the court administrator. *Page 11 
This necessitated the cancelling of the 9:00 a.m. status hearing set for July 18, 2005, and required yet another rescheduling of the status conference and the jury trial. We cannot discern why Appellant's counsel did not depose the court administrator on the time and date set, July 18, 2005, at 2:00 p.m. Appellant did not supplement his motion to dismiss with any further evidence, arguments, or requests to depose the court administrator. Without any indication from Appellant as to how to proceed after the missed deposition, trial was reset for October 12, 2005, and the trial court ruled on the motion to dismiss on September 28, 2005. Appellant filed for yet another continuance. Trial ultimately took place on October 27, 2005. It is abundantly clear from the record, then, that the delay in proceeding to trial after May 11, 2005, is not attributable to the state.
 {¶ 23} As the record does not indicate any speedy trial error, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 24} "Counsel was ineffective in his representation of Defendant-Appellant"
 {¶ 25} Appellant raises numerous issues that he believes indicate the ineffectiveness of his counsel in this case. In Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court determined the standard to be used in reviewing claims of ineffectiveness. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The court devised *Page 12 
a two-part test for reviewing claims of ineffectiveness: "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
 {¶ 26} The Ohio Supreme Court, in State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623, devised a substantially similar test: "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Id. at 396-397. See also, State v.Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 27} A number of Appellant's allegations of ineffectiveness involve facts that are not in the record. He claims that he did not meet with counsel until just before the originally scheduled trial date of March 1, 2005, and that no defense was prepared at *Page 13 
that time. He claims that his counsel never interviewed any witnesses. He claims that counsel coerced him into signing a plea agreement. He asserts that trial counsel did not share discovery evidence with him. He contends that there may have been a video of the car chase and counsel should have found it. These types of allegations, based on facts de hors the record, are not reviewable on direct appeal and are more appropriately raised in a motion for postconviction relief, in which facts outside the record may be introduced. State v. Alicea, 7th Dist. No. 99CA36, 2002-Ohio-6907, ¶ 35; State v. Hartman (2001),93 Ohio St.3d 274, 302, 754 N.E.2d 1150.
 {¶ 28} Appellant also takes issue with counsel's decision not to subpoena any witnesses in his defense. Appellant does not indicate how he was prejudiced by this. "An attorney's failure to subpoena witnesses is within the realm of trial tactics and does not, absent a showing of prejudice, deny a defendant effective assistance of counsel." State v.Woullard, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 64.
 {¶ 29} Appellant further contends that his counsel should have objected to the amount of time it took to rule on the speedy trial motion. Since we have already established why it took four months to rule on the motion, it is unclear how any objection by counsel would have made a difference in the court's resolution of the motion.
 {¶ 30} Appellant contends that counsel should not have objected at trial to photos that were in the prosecutor's file that may have shown that little or no damage was done to Sgt. Klotz's police cruiser when it was struck by Appellant's car. *Page 14 
Apparently Appellant believes that the photos could have shown that his driving did not cause damage to any property. We are mindful that one of the enhancing elements of Appellant's conviction for failure to obey a police officer was that he operated a motor vehicle so as to cause a substantial risk of serious physical harm to persons or property. The state did not have to prove that any harm was actually committed, whether to a police cruiser or to anything else. The state had to prove substantial risk of harm. The photographs were not particularly relevant in this case since the issue was risk of harm, not actual harm. There was ample testimony regarding the risk of harm Appellant created for many people involved in the chase. It is generally agreed that counsel's decision not to object to the introduction of evidence, particularly if the evidence is only marginally related to the case, is understood to be part of the discretionary realm of trial tactics, and counsel's decisions in these matters will not constitute ineffective assistance. State v. Hubbard, 150 Ohio App.3d 623,2002-Ohio-6904, 782 N.E.2d 674, ¶ 37.
 {¶ 31} Appellant asserts that counsel failed to raise contradictory testimony between the two police officers who testified at trial. A close examination of the trial transcript, though, does not reveal any material contradictions in the testimony. Sgt. Klotz testified about the Martins Ferry Police Department's involvement in the chase. (Tr., p. 70.) Two Martins Ferry police cars helped corner Appellant in the Bob Evans Restaurant parking lot. Patrolman Ghent of Martins Ferry testified that he became involved at the end of the chase, and that another Martins Ferry cruiser also assisted. *Page 15 
(Tr., pp. 121ff.) Again, we can find no contradiction to which counsel could have objected at trial.
 {¶ 32} Appellant argues that it was error for counsel to fail to submit a Crim.R. 29 motion for acquittal at the close of the state's evidence. The state's evidence overwhelmingly showed that Appellant was approached by a police officer for questioning, fled the scene, led the police on a chase, did not stop in response to the flashing lights on the police cruiser, stopped the vehicle briefly while an officer approached, then led the police on another chase. A motion for acquittal would have been futile. At any rate, a motion to acquit challenges the sufficiency of the evidence, and this is an issue that can be challenged on appeal even if no Crim.R. 29 motion is presented at trial. Thus, Appellant has not been prejudiced by the failure to move for acquittal during trial. State v. Jones (2001), 91 Ohio St.3d 335, 346,744 N.E.2d 1163.
 {¶ 33} This assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3 {¶ 34} "The judgment was against the manifest weight of the evidence."
 {¶ 35} When reviewing the manifest weight of the evidence in a criminal trial, an appellate court, "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin *Page 16 
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The appellate court's discretion to grant a new trial, "`should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting Martin. A reviewing court should not reverse a judgment as being against the manifest weight of the evidence where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v.Eskridge (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304.
 {¶ 36} Appellant was charged with a violation of R.C. 2921.331(B), which states: "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." He was also charged with an enhancement contained in R.C.2921.331(C)(5)(a)(ii):
 {¶ 37} "A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 {¶ 38} "* * *
 {¶ 39} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."
 {¶ 40} Much of Appellant's argument deals with facts that are irrelevant to the crime that was actually being tried. Appellant claims he was never identified as the person who was allegedly soliciting for money in Bridgeport. Appellant was not charged with soliciting money; he was charged with fleeing from the police. Whether *Page 17 
or not the alleged solicitation happened, or whether it was Appellant who did the soliciting, is irrelevant. Even if there was no basis for the police to talk to him about whether he was panhandling, he did not acquire a right to break multiple traffic laws and engage the police in a high speed chase, endangering the lives of many people.
 {¶ 41} The record reflects that Appellant fled from police after the initial encounter in the parking lot of Papa Johns Restaurant. He fled after the emergency lights of the police cruiser were turned on, and continued to flee after the police siren was turned on. All of these were clear indications to Appellant to stop and present himself to the police, which he clearly ignored numerous times. The record also contains ample evidence as to the risk of harm he posed to others. His speed was as high as 90 m.p.h. Cars were taking evasive action. He drove the wrong way on a highway ramp. He drove through stop signs. These are the facts that are relevant to the crime and that are present throughout the record on appeal.
 {¶ 42} Appellant correctly points to some credibility issues that arose from the testimony at trial. It is curious that Officer Klotz revealed some facts at trial that were not mentioned in earlier police reports. Officer Klotz also appeared to equivocate somewhat about how hard Appellant hit the police cruiser toward the end of the chase. The officer may have been confused or even mistaken as to some of the facts, such as the number of cars involved or the length of the chase. None of these things, though, indicate any fundamental unfairness about the trial. The officers who were part of the chase testified and Appellant's counsel cross-examined them. The *Page 18 
jury gave credence to enough of the officers' testimony to render a guilty verdict. Appellant's manifest weight argument is therefore overruled.
 ASSIGNMENT OF ERROR NO. 4 {¶ 43} "The Court erred in denying Defendant-Appellant's objection to prevent Officer William Ghent from testifying."
 {¶ 44} It is not clear what the basis of Appellant's argument is in this assignment of error. Appellant's counsel objected to Patrolman Ghent taking the stand, stating he was not aware that the officer would be a witness. (Tr., p. 117.) The prosecutor pointed out that Patrolman Ghent was listed on multiple documents as a witness, including the initial police report that was made available during discovery. It is true that the state's initial response to Appellant's request for discovery from January 27, 2005, did not specifically list Patrolman Ghent, but the discovery form did note that any person identified in the attachments (such as the police report) could be called at trial, and this clearly included Patrolman Ghent. Ghent was also subpoenaed as a prosecution witness multiple times before trial, as early as September 16, 2005, which was six weeks before the date that Appellant's trial actually took place. The record reveals that counsel should not have been surprised when Patrolman Ghent was called as a witness at trial.
 {¶ 45} Even if the prosecutor had failed to reveal Patrolman Ghent as a witness, there would be no reversible error given the facts of this case. Crim.R. 16(E)(3) provides for the regulation of discovery in a criminal case and permits a trial court to exercise discretion in determining the appropriate sanction for a discovery *Page 19 
violation, including sanctions for failure to reveal witnesses who will testify at trial. A trial court does not abuse its discretion in allowing a witness to testify where the record fails to disclose: (1) a willful violation of Crim.R. 16; (2) that foreknowledge would have benefited the accused in the preparation of his or her defense; and (3) that the accused was unfairly prejudiced. State v. Heinish (1990),50 Ohio St.3d 231, 553 N.E.2d 1026, syllabus. There is no indication of any willful violation in how Patrolman Ghent was presented as a witness. Appellant points to nothing that would indicate how he would have benefited by having earlier knowledge of the witness. Appellant does not indicate how he was prejudiced, particularly since Patrolman Ghent's testimony was in large part a restatement of what Office Klotz had already said. We must summarily overrule Appellant's assignment of error on this issue.
 ASSIGNMENT OF ERROR NO. 5 {¶ 46} "Pictures of the damage to the patrol car and Defendant-Appellant's motor vehicle were not disclosed prior to trial constituting prosecutorial misconduct."
 {¶ 47} In a somewhat novel twist, counsel is trying to claim as reversible error the fact that the state had photos depicting damage to Officer Klotz's patrol car that could have been used at trial, and yet, Appellant's counsel objected to their use at trial and the objection was sustained. Appellant cannot show any prejudice because his own counsel objected to the photographs and they were excluded from trial. Appellant is somehow trying to argue that the prosecutor violated Crim.R. 16, which sets forth procedures for discovery, and Appellant would like some sanction to apply. As already stated, the test for violations of Crim.R. 16 by the prosecution is a three- *Page 20 
part test: (1) the prosecution's failure to disclose was a willful violation of the rule; (2) foreknowledge of the information would have benefited the accused in preparing a defense; and (3) the accused has suffered prejudice. State v. Joseph (1995), 73 Ohio St.3d 450, 458,653 N.E.2d 285. Once again, Appellant has failed to establish any of the three factors. The alleged photos were made available to Appellant early in the discovery process. There is no indication of how counsel would have benefited by having the photos before trial. The photos were not introduced at trial, in accordance with counsel's objection. Since the photos are not actually in evidence, they had no impact on the trial. This assignment of error is also overruled.
 {¶ 48} There is no merit to any of the five assignments of error in the appeal, and the judgment of the Belmont County Court of Common Pleas is affirmed in full.
 Donofrio, J., concurs. DeGenaro, P.J., concurs. *Page 1