[Cite as *State v. Redelman*, 2013-Ohio-657.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2012-04-010 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 2/25/2013 |
| - vs - | : | |
| | : | |
| TRAVIS L. REDELMAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 2011-5129

Richard W. Moyer, Clinton County Prosecuting Attorney, Susan H. Cohen, 103 East Main Street, Wilmington, Ohio 45177, for plaintiff-appellee

Jeffrey E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

**BRESSLER, J.**

{¶ 1}  Defendant-appellant, Travis Redelman, appeals his conviction in the Clinton County Court of Common Pleas for three counts of trafficking in drugs.  For the reasons discussed below, we affirm the decision of the trial court.

{¶ 2}  Appellant's charges stemmed from the execution of a search warrant in his hotel room at the Holiday Inn Express in Wilmington, Ohio, on May 19, 2011.  The search

warrant was predicated upon an affidavit filed the same day by Major Brett Prickett of the Clinton County Sherriff's Office.

{¶ 3} In his affidavit, Major Prickett stated that earlier that day, an undercover police officer had purchased suspected marijuana and LSD from two known drug dealers in the Wilmington area. During the transaction, the drug dealers told the undercover officer that they had to get more drugs from a hotel. The drug dealers also advised the officer that their "source" from Indiana was at the hotel.

{¶ 4} The affidavit also stated that shortly after the drug purchase, Sergeant Douglas Eastes observed the drug dealers' vehicle parked next to a Chevrolet Impala with Indiana license plates at the Holiday Inn Express hotel located at 155 Holiday Drive in Wilmington, Ohio. According to Major Prickett, Sergeant Eastes checked the Impala's license plates with the Greensburg, Indiana Police Department, where a detective named Bill Meyerrose indicated that appellant had ties to the vehicle's owner. Detective Meyerrose also stated that his department had information that appellant was involved in drug trafficking, and that appellant had an outstanding warrant for his arrest in Indiana for a probation violation concerning a felony drug conviction. Major Prickett averred that he subsequently checked appellant's criminal record and discovered that appellant had multiple prior arrests from 2002 to 2006 for possession of marijuana and other controlled substances, as well as dealing in marijuana and cocaine.

{¶ 5} Lastly, Major Prickett averred that a Holiday Inn Express employee had provided officers with a hotel guest list, which showed that appellant was registered in Room 213. Prickett stated that the hotel employee told Sergeant Eastes that he had seen many young people going to and from appellant's hotel room.

{¶ 6} Several hours after Major Prickett submitted his affidavit, the Clinton County Municipal Court issued a search warrant for Room 213 of the hotel and any person found

in the hotel room. The search warrant also covered any vehicles registered to or used by appellant.

{¶ 7} Later the same day, officers executed the search warrant in appellant's hotel room, where they recovered miscellaneous pills, a brown substance, a tan powder, a black substance, two bottles of "soy isoflavenes," loose powder, a laptop, a pipe, and cash. During the search, Sergeant Eastes recognized one of the pills as Oxycodone. Accordingly, the officers arrested appellant and transported him to the Clinton County jail. Several days later, the officers submitted the other substances to the Miami Valley Crime Laboratory for drug analysis.

{¶ 8} On May 24, 2011, the state filed a complaint in the Clinton County Municipal Court for one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2). The complaint alleged that appellant did knowingly prepare Oxycodone, a Schedule II controlled substance, for shipment or distribution. The trial court scheduled a preliminary hearing on the matter for May 27, 2011, but continued the hearing at appellant's request until June 1, 2011. On June 1, 2011, appellant appeared before the municipal court and waived the preliminary hearing. Two days later, the case was bound over to the Clinton County Common Pleas Court.

{¶ 9} No further action was taken to prosecute the case until August 3, 2011, when the Miami Valley Crime Lab issued its report identifying the other substances recovered from appellant's hotel room as LSD, Hashish, Alprazolam, and Hydrocodone.

{¶ 10} On August 8, 2011, the state issued a seven-count indictment against appellant, which he received the next day. Count 1 of the indictment charged appellant with aggravated trafficking in Oxycodone, the same charge that he faced in municipal court. Count 6 was also related to Oxycodone. However, as a result of the Miami Valley Crime Lab report, the state added a charge for possession of LSD, and four separate

- 3 -

charges for trafficking in LSD, Hashish, Alprazolam, and Hydrocodone.

{¶ 11} On August 9, 2011, the state filed a Motion for Speedy Trial, asking the court to set the matter for trial prior to August 17, 2011. In a footnote, the state explained that appellant had been incarcerated since his arrest on May 19, 2011, thus his speedy-trial deadline was rapidly approaching.

{¶ 12} On August 15, 2011, the trial court denied the state's request and scheduled a jury trial for September 22, 2011. The court explained that two days was not sufficient time to allow recently appointed defense counsel to prepare for trial, and that the court could not fit a two-day jury trial onto its docket by then.

{¶ 13} On August 18, 2011, defense counsel moved to dismiss the case for a speedy-trial violation. The state filed a memorandum in opposition. Following a hearing on the matter, the trial court granted appellant's motion as to Counts 1 and 6 relating to the Oxycodone, but denied the motion as to the remaining charges upon finding that they stemmed from new facts in the second indictment.

{¶ 14} After numerous additional pretrial motions, appellant moved to suppress the evidence obtained during the search of his hotel room. On January 23, 2012, the trial court denied appellant's motion, and on February 6, 2012, appellant entered no contest pleas to Counts 2, 3 and 4 of the indictment. The court dismissed Counts 5 and 7 and sentenced appellant to 30 months in prison.

{¶ 15} Appellant timely appeals, raising two assignments of error for review.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED BY FAILING TO DISMISS ALL COUNTS OF THE INDICTMENT FOR FAILURE TO PROSECUTE APPELLANT WITHIN HIS STATUTORY AND CONSTITUTIONAL SPEEDY TRIAL TIME.

{¶ 18} Appellant first argues that the trial court erred in failing to dismiss Counts 2,

3, 4, 5 and 7, because the state failed to bring the case to trial within the statutorily prescribed time period under R.C. 2945.71.

{¶ 19} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Nelson*, 12th Dist. No. CA2007-11-046, 2009-Ohio-555, ¶ 3, citing *State v. High*, 143 Ohio App.3d 232, 242 (7th Dist.2001). A reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. *State v. Davenport*, 12th Dist. No. CA2005-01-005, 2005-Ohio-6686, ¶ 8.

{¶ 20} Ohio recognizes both a constitutional and a statutory right to a speedy trial. Section 10, Article I of the Ohio Constitution; Sixth and Fourteenth Amendments to the United States Constitution. Ohio enacted R.C. 2945.71 to 2945.73 to provide specific time requirements for the state to bring a defendant to trial. *State v. Baker*, 78 Ohio St.3d 108, 110 (1997). Courts must strictly construe these statutes against the state. *Nelson*, 2009-Ohio-555 at ¶ 4, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57 (1996).

{¶ 21} According to R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days from the date of his arrest, not including the actual date of his arrest. R.C. 2945.71(E) provides that when a defendant is held in jail in lieu of bail on the pending charge, each day shall be counted as three days.

{¶ 22} R.C. 2945.72 provides circumstances that extend or toll the time within which a defendant must be brought to trial. *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, ¶ 17. R.C. 2945.72 states, in pertinent part, that the time within which an accused must be brought to trial may be extended by: "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 23} According to the record, appellant was arrested on May 19, 2011 and was held in jail in lieu of bail from that day onward. On May 24, 2011, the state filed a complaint in the municipal court, alleging aggravated trafficking in Oxycodone. Then, on August 8, 2011, the state returned the seven-count indictment against appellant, and the next day, the state moved the court to conduct a jury trial prior to August 17, 2011. On August 15, 2011, the court denied the state's motion and scheduled a trial for September 22, 2011, which was the "first and next reasonably available date on the Court's docket * * *." The court explained,

> A first hearing to respond to the Indictment was conducted on August 10, 2011. Counsel was appointed to represent Defendant; Defendant entered a plea of "not guilty" to all charges; and, a first pre-trial hearing was scheduled for this date and time. * * *.
>
> Defense counsel just received discovery of this date. While the court can "*set the within criminal action for trial prior to the 17th day of August, 2011*" as requested by the state of Ohio, the Court cannot *bring the Defendant to trial and conduct a jury trial prior to August 17, 2011.* Nor would it expect defense counsel to be prepared to conduct a jury trial tomorrow.

(Emphasis sic.)

{¶ 24} It has often been held that scheduling conflicts, crowded dockets, or the lack of an available courtroom, are reasonable bases necessitating a continuance under R.C. 2945.72(H). *See State v. Lee*, 48 Ohio St.2d 208, 210 (1976); *State v. Noble*, 12th Dist. No. CA2007-03-008, 2008-Ohio-355, ¶ 11. Ohio courts have also found that it is reasonable for a court to continue the matter to give recently appointed defense counsel time to prepare for trial. *See State v. Mcrae*, 55 Ohio St.2d 149 (1978) (47-day continuance, granted to give recently appointed defense counsel time to prepare for trial, was reasonable).

{¶ 25} In order for a continuance to fall within the ambit of R.C. 2945.72(H), the trial

court must: (1) record the continuance through its journal entry prior to the expiration of the speedy trial requirements; (2) identify the party to be charged with the continuance; and (3) briefly indicate the reasons requiring the continuance. *Noble* at ¶ 15. However, where the reasonableness, *i.e.*, the length, of the continuance is seriously questioned, mere judgment entries alone, reflecting the reason for the delay, are insufficient and the record must support the delay. *State v. Richardson*, 12th Dist. No. CA86-07-108, 1987 WL 6705, *4 (Feb. 17, 1987); *State v. Wentworth*, 54 Ohio St.2d 171, 175 (1978).

{¶ 26} Since the extension in this case was entered prior to the expiration of the 90-day speedy-trial period on August 17, 2011, and the reasons for the delay, i.e., the court's crowded docket and the considerable strain on the defense's ability to prepare for trial on the newly issued charges, were enumerated in the journal entry, we find that the 39-day continuance from August 15, 2011, until September 22, 2011, was facially reasonable. Since the reasonableness of the continuance cannot be seriously questioned, we conclude that the trial court's entry was sufficient to support the sua sponte delay pursuant to R.C. 2945.72(H). *See, e.g., State v. Nottingham*, 7th Dist. No. 05 BE 39, 2007-Ohio-3040 (74-day continuance by court reasonable); *State v. Webb*, 4th Dist. No. 01CA32, 2002-Ohio-3552 (64-day continuance by court reasonable).

{¶ 27} In addition to this tolling event, we find that there were other events between August 2011 and February 2012 that tolled the speedy-trial time, so as to avoid a violation of appellant's statutory speedy-trial rights. Shortly after ordering the continuance, the trial court issued a decision denying appellant's motion to dismiss on speedy-trial grounds, which explained that the state could pursue Counts 2, 3, 4, 5 and 7 because they were entitled to their own speedy-trial timetable under *State v. Baker*, 78 Ohio St.3d 108 (1997). In *Baker*, the Supreme Court of Ohio held that, in cases involving multiple indictments, "subsequent charges against an accused would be subject to the same

speedy trial constraints as the original charges, if the additional charges arose from the same facts as the first indictment." *Id.* at 110, citing *State v. Adams*, 43 Ohio St.3d 67 (1989). However, the Court held that where subsequent charges arise from new and additional facts, unknown at the time of the original arrest, the state is not bound to the speedy-trial timetable of the original arrest and may be afforded a new speedy-trial period. *Id.* at 111-112. *See also Davenport*, 2005-Ohio-6686 at ¶ 12.

{¶ 28} Here, appellant was arrested on May 19, 2011 and formally charged with aggravated trafficking in Oxycodone on May 24, 2011. During the hearing on appellant's motion to dismiss, Sergeant Eastes, the arresting officer, explained that he arrested appellant after he identified one of the pills as Oxycodone using the internet in the hotel room. However, Sergeant Eastes testified that he could not identify the remaining substances, and that until the Miami Valley Crime Laboratory analyzed the materials, the sheriff's office would not know what they were. When the police obtained the lab report on August 3, 2011, they immediately turned it over to the state. On August 8, 2011, the state returned the seven-count indictment, charging appellant with aggravated trafficking in Oxycodone (Count 1), trafficking in LSD (Count 2), trafficking in Hashish (Count 3), trafficking in Alprazolam (Count 4), trafficking in Hydrocodone (Count 5), aggravated possession of Oxycodone (Count 6), and possession of LSD (Count 7). Appellant received a copy of the indictment on August 9, 2011.

{¶ 29} Following the hearing, the trial court dismissed Counts 1 and 6 on speedy-trial grounds, explaining that the facts supporting the charges involving Oxycodone were clearly known to the state at the time of appellant's arrest. However, the court found that Counts 2, 3, 4, 5 and 7 were the result of facts unknown at the time of appellant's arrest, namely, the information in the Miami Valley Crime Lab report. Thus, the court held that the speedy-trial timetable of the initial complaint did not apply, and denied appellant's

motion to dismiss.

{¶ 30} We agree with the trial court's findings. Appellant's May 19, 2011 arrest and the municipal court complaint were based solely on Sergeant Eastes' positive identification of Oxycodone in the hotel room. Conversely, Counts 2, 3, 4, 5 and 7 of the second indictment were the result of the new information in the Miami Valley Crime Lab report, which positively identified the remaining narcotics recovered during the search. As the lab report was not available to the state at the time of appellant's arrest, the rule announced in *Baker* applies, and the state was not subject to the speedy-trial timetable applicable to the initial complaint. We also agree with the trial court's holding that the speedy-trial time clock for Counts 2, 3, 4, 5 and 7 began to run when appellant received a copy of the indictment on August 9, 2011. *See State v. Riley*, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 36 (12th Dist.). The record shows that the majority of the delay since that date was chargeable to appellant, due to his requests for discovery and a bill of particulars, his motion to suppress, and his numerous motions for continuances, and that the delay chargeable to the state was less than 90 days. R.C. 2945.72.

{¶ 31} As an aside, we are well aware of appellant's position that the lab results were not new facts for the purposes of *Baker* because the officers could have used the internet to identify the other substances in the hotel room. While some drugs may, in fact, be more easily recognized in the field, given the diversity and sheer number of items recovered by the officers in this case, we cannot say that the operative facts supporting the drug charges in the second indictment were present at the time of appellant's arrest.[1]

{¶ 32} We are also aware of appellant's contention that the lab results cannot

---

1. The Miami Valley Crime Lab received the following substances for analysis: one plastic bag containing "brown powder," one plastic bag containing a "sticky brown substance," one plastic bag containing "one sheet of paper divided into 100 squares," three yellow tablets marked "V/36 01," seven blue tablets marked "GG 258," four white tablets marked "MYLAN A4," seven blue tablets marked "A 215," one green tablet marked "WATSON 503," 12.5 green tablets marked "V/48 11," one white tablet marked "WATSON 932," two white tablets marked "IP 109," and one blue tablet marked "GG 258."

constitute new facts because the officers already suspected that the substances recovered were drugs on the day of the arrest, as indicated by Major Prickett's affidavit in support of the search warrant, which stated that on May 19, 2011, the undercover officer had purchased "green vegetation, which appeared to be marijuana [and] * * * blotter paper, which appeared to contain LSD."  However, Ohio courts have held that although an arresting officer may have *suspected* a certain type of contraband at the time of the arrest, a subsequent laboratory report confirming those suspicions was nevertheless an additional fact not known to the state at the time the original charges were filed. (Emphasis added.)  *State v. Brown*, 10th Dist. No. 12AP-292, 2012-Ohio-5903, ¶ 13.  *See also State v. Clark*, 11th Dist. Nos. 2001-P-0031, 2001-P-0033, 2001-P-0034, 2001-P-0057, 2001-P-0058, 2004-Ohio-334*,* ¶ 73 (finding that although the state "may have had a *good idea* that the substance [seized] was cocaine prior to the analysis date, they did not know *for sure* until the substance was analyzed," thus, subsequent drug charges did not violate defendant's speedy-trial rights); *State v. Armstrong*, 9th Dist. No. 03CA0064-M, 2004-Ohio-726.

{¶ 33} Upon review, we find that, based upon the calculation of days from August 9, 2011, including the tolling periods attributable to appellant, the statutory time limit for Counts 2, 3, 4, 5 and 7 under R.C. 2945.71 had not expired.  R.C. 2945.72(H). Additionally, we find that appellant's constitutional speedy-trial rights were not violated. Pursuant to the rule in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972), we must balance four factors in determining whether a violation occurred: the length of the delay, the reason for the delay, appellant's assertion of his right, and prejudice to appellant.  *Id.*  Even if, for the sake of argument only, we were to assume that the time period in this case was overly long, on balance, the other factors in the case weigh against a finding that appellant's constitutional speedy-trial rights were violated.  As

discussed above, the reasons for the delay were largely attributable to the defense, and appellant was not prejudiced by the delay, as trial counsel sought the extra time for discovery, pretrial motions, and trial preparation.

{¶ 34} In sum, neither appellant's statutory right to a speedy trial nor his constitutional right to a speedy trial was violated in this case. Accordingly, appellant's first assignment of error is overruled.

{¶ 35} Assignment of Error No. 2:

{¶ 36} THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF THE SEARCH.

{¶ 37} In his second assignment of error, appellant claims that the trial court erred in denying his motion to suppress the evidence seized from his hotel room. Specifically, appellant maintains that the search warrant was not based on probable cause.

{¶ 38} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing judge or magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Prater*, 12th Dist. No. CA2001-12-114, 2002-Ohio-4487, ¶ 4, citing *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. *See also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983).

{¶ 39} Neither a trial court nor an appellate court should substitute its judgment for that of the issuing judge or magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *Prater* at ¶ 5. The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Id.*

Trial and appellate courts should accord great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George*, 45 Ohio St.3d at paragraph two of the syllabus.

{¶ 40} In his motion to suppress, appellant argued that Major Prickett's affidavit was insufficient to support the issuance of the warrant, because it failed to provide a substantial basis for crediting the hearsay it contained.

{¶ 41} With regard to hearsay information, we note that while it is desirable to have the affiant provide as much information as possible from his own knowledge, practical considerations often require the affiant to rely on hearsay information and/or information provided by other sources. *State v. Young*, 12th Dist. No. CA2005-08-074, 2006-Ohio-1784, ¶ 21. The basis of knowledge and the veracity of the person supplying hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. *George*, 45 Ohio St.3d at 329; *State v. Taylor*, 82 Ohio App.3d 434, 442 (2nd Dist.1992). The fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, *per se*, invalidate the resulting search warrant. *Prater*, 2002-Ohio-4487 at ¶ 7, citing *State v. Jones*, 1st Dist. No. C-840767, 1985 WL 11472 (Sept. 18, 1985).

{¶ 42} As in *Prater*, much of the information provided to Major Prickett from the undercover police officer actually came from the drug dealers, who acted as third-party informants. Additionally, Major Prickett received information from Detective Bill Meyerrose from Indiana, as well as a hotel employee. Major Prickett did not state explicitly that the informants were reliable, nor did he provide the basis of the informants' knowledge. However, indicia of veracity or reliability of an informant's statements can also be provided through independent police investigation. In *Gates*, the United States

Supreme Court acknowledged that its decisions applying the totality-of-the-circumstances analysis "have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Gates*, 462 U.S. at 241. *See also State v. Nunez*, 180 Ohio App.3d 189, 2008-Ohio-6806, ¶ 20 (6th Dist.). Further, "[o]bservations of fellow law enforcement officers are plainly a reliable basis for a warrant applied for by one of their number." *Young*, 2006-Ohio-1784 at ¶ 21.

{¶ 43} Here, Major Prickett stated in his affidavit that shortly after the undercover officer purchased the suspected drugs, Sergeant Eastes personally observed the drug dealers' vehicle parked next to a car with Indiana license plates at the Holiday Inn Express in Wilmington, Ohio. The affidavit also stated that the officers obtained a Holiday Inn Express guest list, which showed that appellant was registered in Room 213. This information clearly corroborated the drug dealers' statements that they were headed toward a hotel where their "source" from Indiana was located, as well as the hotel employee's statement that he had seen heavy foot traffic going to and from appellant's room. Additionally, Major Prickett had personal knowledge of appellant's extensive arrest record, which supported the statements from the Indiana police that appellant was involved in drug trafficking, and that he had an outstanding arrest warrant for a probation violation concerning a felony conviction for delivery of cocaine.

{¶ 44} Further, contrary to appellant's opinion, the affidavit was not lacking in specificity as to the hotel where appellant was staying, nor would it have supported the "search of any hotel room that had an Indiana plate in the parking lot." The affidavit specifically identified Room 213 at the Holiday Inn Express located at "155 Holiday Drive, Wilmington, Clinton County, Ohio" as the area subject to the search. Thus, we disagree with appellant's argument that the affidavit was lacking in sufficient specificity.

{¶ 45} In sum, while separately, the informants' hearsay statements would have

been insufficient to support a probable cause determination, the collective totality of the information was relevant to the judge's determination of probable cause. The additional facts asserted by Major Prickett were observed by fellow police officers just hours before applying for the search warrant, and they were sufficiently detailed to support a fair probability that evidence or contraband related to criminal activity would be found in appellant's hotel room. Based upon the foregoing, and keeping in mind the preference to be accorded to warrants in doubtful or marginal cases, we conclude that Major Prickett's affidavit contained sufficient information to support a finding of probable cause to issue the warrant.

{¶ 46} However, even if Major Prickett's affidavit did not provide a basis for finding that there was probable cause, we would nevertheless be compelled to uphold this search based upon the "good faith exception" to the exclusionary rule. Under the good faith exception, we are to uphold searches executed pursuant to insufficient warrants where police officers objectively and reasonably relied on a neutral and detached judge's determination that probable cause existed. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984); *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).

{¶ 47} While appellant argues to the contrary, we cannot say that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or that the warrant was facially deficient. *Leon* at paragraph 1(e) of the syllabus. *See also George*, 45 Ohio St.3d at 331; *State v. Sharp*, 109 Ohio App.3d 757 (12th Dist.1996); *Young*, 2006-Ohio-1784.

{¶ 48} Therefore, we find that the trial court did not err in denying the motion to suppress the evidence found in appellant's hotel room. Appellant's second assignment of error is overruled.

{¶ 49} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.


Bressler, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.